**ALLSTATE INSURANCE COMPANY,**
Plaintiff—Appellee,

v.

**OCCIDENTAL INTERNATIONAL, INC.**
and Omar Chavez, Defendants—
Appellants.

No. 97–1882.

United States Court of Appeals,
First Circuit.

Heard Jan. 5, 1998.

Decided March 25, 1998.

Eugene F. Hestres, San Juan, PR, with whom Bird Bird & Hestres was on brief, for appellants.

Ronald L. Kammer, Eric G. Belsky, Hinshaw & Culbertson, Miami, FL, Francisco E. Colón–Ramírez and Law Offices of Francisco Colón–Pagán, San Juan, Pr, were on brief, for appellee.

Before BOUDIN, Circuit Judge, COFFIN, Senior Circuit Judge, and SHADUR,* Senior District Judge.

SHADUR, Senior District Judge.

Occidental International, Inc. ("Occidental") and Omar Chavez ("Chavez") appeal the order of the United States District Court for the District of Puerto Rico granting a Fed. R.Civ.P. ("Rule") 56 summary judgment motion filed by Allstate Insurance Company ("Allstate"). Allstate had brought its diversity-of-citizenship action for a declaration pur-

* Of the Northern District of Illinois, sitting by designation.

suant to the Declaratory Judgment Act (28 U.S.C. § 2201) that an insurance policy it had issued to Occidental imposed no obligation to defend or to indemnify Occidental and Chavez with respect to any damages, attorneys' fees or costs incurred in defending a lawsuit brought by a former Occidental employee. We affirm.

### Facts [1]

We briefly summarize the uncontroverted essential facts. Other relevant facts that fit better into the substantive legal discussion will be set out later in this opinion.

On September 26, 1991 Allstate issued a commercial general liability insurance policy ("Policy") to Occidental. Coverage under the Policy was predicated on Occidental's adherence to several conditions. Of particular importance here, coverage was conditional on Occidental's providing Allstate with "prompt notice" of any claim made against any insured party (R. 70).[2]

In November 1992 Sandra Rodríguez Hernández ("Rodríguez"), the former office manager of Occidental's Puerto Rico office, filed a lawsuit against Occidental, Chavez and others seeking damages for wrongful termination and sexual harassment. On September 1, 1995 a jury awarded Rodríguez $200,000, and shortly thereafter she filed a post-trial motion to recover attorneys' fees and costs in excess of $420,000.

Meanwhile Occidental had said nothing at all to Allstate during the nearly three-year life of the Rodríguez lawsuit. Instead it waited until nearly two months after it had been tagged with the adverse judgment—October 25, 1995—to notify Allstate. In light of that belated notification, which Allstate contends violated the Policy's notice provision, Allstate sought the declaration referred to at the outset of this opinion. After the parties then filed cross-motions for summary judgment, the district court granted Allstate's motion and correspondingly denied

the Occidental–Chavez motion. This appeal followed.

### Standard of Review

We review the district court's grant of summary judgment de novo (*Vartanian v. Monsanto Co.*, 131 F.3d 264, 266 (1st Cir. 1997)). Familiar Rule 56 principles impose on a party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). As we stated in *Woods–Leber v. Hyatt Hotels of P.R., Inc.*, 124 F.3d 47, 49 (1st Cir.1997)(internal citations and quotation marks omitted):

> The genuineness requirement signifies that a factual controversy must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side. The materiality requirement signifies that the factual controversy must pertain to an issue which might affect the outcome of the suit under the governing law.

For Rule 56 purposes we read the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor (*Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997)). In that regard "[a]n inference is reasonable only if it can be drawn from the evidence without resort to speculation" (*Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 672 (1st Cir.1996), quoting *Frieze v. Boatmen's Bank*, 950 F.2d 538, 541 (8th Cir.1991)).

Where as here cross-motions for summary judgment are involved, "the court must consider each motion separately, drawing inferences against each movant in turn" (*Reich*, 126 F.3d at 6). Adopting such a dual perspective—one that can best be described as Janus-like—sometimes forces the denial of both motions. That potential for a dual denial does not arise here, however, because the underlying facts are not in dispute. Instead the parties are at odds about whether as a

---

1. This undisputed factual statement is drawn from the parties' briefs and the district court's opinion reported at 967 F.Supp. 642 (D.P.R. 1997). Citations to that opinion will read "Opinion at—," reflecting the F.Supp. page number but omitting the volume number.

2. References to the record will take the form "R.—."

matter of law the district court erred in holding that:

1. Florida's substantive law, rather than Puerto Rico's, governed this controversy.

2. Occidental's failure to notify Allstate of the Rodríguez claim until after an adverse judgment had been rendered leads to a ruling of prejudice as a matter of law, thus relieving Allstate of its duties to defend or to indemnify under the Policy.

### Choice of Law [3]

Before we turn to the merits of the parties' respective positions, we must first identify the applicable substantive law, a subject on which the Policy is silent. Allstate argues that Florida law controls, while Occidental and Chavez plump for the application of Puerto Rican law. That issue has particular importance here: Florida law presumes that an insurer is prejudiced by an insured's failure to give prompt notice of a claim, with the burden placed on the insured to rebut that presumption, while under Puerto Rican law an insurer must prove actual prejudice to prevail in a late-notice case.

For cases sounding in diversity, the *Erie v. Tompkins* mandate to look to state law for the substantive rules of decision includes the application of the forum's choice of law doctrines (*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). *New Ponce Shopping Ctr., S.E. v. Integrand Assurance Co.*, 86 F.3d 265, 267 (1st Cir.1996) (internal citations omitted), recently clarified our task in the absence of a choice of law contractual provision:

A federal court sitting in a diversity case must apply the choice of law rules of the forum state. Puerto Rico, the forum territory in this case, has approved the "dominant or significant contacts" test for contract and tort actions. Under that test, the laws of the jurisdiction with the most significant contacts to the disputed issues will apply.

In making that assessment we are guided by the Restatement (Second) of Conflict of Laws (1971) ("Restatement") (*A.M. Capen's Co. v. American Trading & Prod. Corp.*, 74 F.3d 317, 320 (1st Cir.1996)).

Restatement § 188 identifies, for contract actions such as this one, five significant contacts to be evaluated in accordance with their relative importance to the issues presented by the lawsuit:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

In those terms the Policy's Florida contacts have overwhelming significance:

(a) Occidental entered into the Policy in Florida, though Allstate's agents signed the document in Illinois (R. 73).[4]

(b) Florida was the place where the Policy was applied for, negotiated and issued (*id.* 288–90).

(c) All demands for coverage were sent to Allstate's Florida office (*id.* 206–20). Occidental paid the premium in Florida (*id.* 28).

(d) According to the policy application itself, which required Occidental to list all locations for which it desired insurance coverage, the insured premises are located at "5001 SW 74 Ct. # 203 Miami F[lorida] 33155" (*id.* 27). Although the application had a specifically designated set of boxes for the listing of other premises, no other locations were listed there. Indeed, Allstate underwriter Germaine Smith testified that the policy was underwritten and issued based upon the belief that the Miami address was Occidental's principal and sole place of business (*id.* 288–91). She stated without contradiction that Allstate was unaware "that Occidental maintained any of-

---

3. This issue is a legal question subject to plenary review (see *Arcwel Marine, Inc. v. Southwest Marine, Inc.*, 816 F.2d 468, 470 (9th Cir.1987)).

4. As Restatement § 188 cmt. e says:
Standing alone, the place of contracting is a relatively insignificant contact.

fice in Puerto Rico or that it sold transformers to the Puerto Rico Electric Power Authority" (*id.* 292). Thus it is clear that the principal location of the intended insured risks was in Florida, although the general language of the Policy's coverage provision was broad enough to encompass the Puerto–Rico–based conduct for which Rodríguez sued.

(e) As to the final factor, Allstate is an Illinois corporation with its principal place of business in Illinois. Occidental is a Florida corporation with its principal place of business in Miami. Occidental's president, chief executive officer and primary shareholder Chavez is a citizen and resident of Florida who occasionally travels to Puerto Rico for business. Only Rodríguez is a citizen and resident of Puerto Rico.

All of that presents a sharp contrast to the Policy's minimal relevant contacts with Puerto Rico. It must be remembered that this is a contract-based action, yet Puerto Rico had no contacts at all either with the Policy or with the parties who signed it. Instead Occidental must rely on the fortuity that the sexual harassment and employment termination took place in Puerto Rico and that the broad sweep of the insuring clause did extend coverage to those incidents. Under that approach the same provisions in an insurance contract could receive almost infinitely varied constructions from time to time, based on the happenstance location of insured events—for example, an automobile collision in a jurisdiction where neither the insurer nor the insured had any meaningful contacts at all. In that sense the distinction articulated by *In re San Juan Dupont Plaza Hotel Fire Litig.*, 45 F.3d 569, 576 (1st Cir.1995) (citations and footnote omitted) between an insurance policy itself and the specific occurrence that may trigger potential coverage liability applies here with equal force:

> Because the district court here was sitting in diversity, it was required to follow Puerto Rico's choice-of-law rules. Puerto Rico applies a "dominant contacts" test in contract actions. Under that test, the law that applies is the law of the jurisdiction with the most significant contacts to the disputed issue, with due consideration given to the policies at stake. Although the factors do not all point one way, we agree with the district court that California has the most significant contacts with the issue of pre-judgment interest.
>
> In substance, pre-judgment interest is sought here in connection with the interpretation and enforcement of a contract—specifically two insurance policies—indisputably governed by California law. The policies were applied for, negotiated, issued and paid for in California; and the William Lyon Company and Lyon himself were based there. Puerto Rico, by contrast, has the main connection with the fire but no contacts with the policies except for the fortuity that insurance coverage was litigated in the same case as liability for the fire.

That language might well have been written for this case, with the now-disputed issue of notice to the insurer substituted for the disputed issue of pre-judgment interest referred to in the quotation. We agree with the district court's conclusion that Florida substantive law provides the rules of decision.

### Failure To Provide Timely Notice

■ Occidental–Chavez next argue that the district court improperly held that Occidental breached the Policy's notice provision and that such breach prejudiced Allstate as a matter of law. As is proper in contract cases, we start with the Policy's language. Condition 11 of the "General Conditions" section, entitled "What To Do If You [5] Have a Loss," provides:

> If someone is injured or makes a liability claim against any person insured, that person must:
>
> a. Promptly notify us or one of our agents of what happened. You must also furnish us the necessary information regarding the time and place of the event and the names and addresses of any witnesses and injured people.
>
> \*    \*    \*    \*    \*    \*

---

5. "You" is defined in the policy as the insured

(R. 73).

c. Send us copies of all legal documents if any persons insured are sued, or someone files a claim against any persons injured.

Yet it is undisputed that Occidental first provided Allstate with the contractually required notice of the Rodríguez claim almost two months after the rendition of the adverse jury verdict and nearly three years after Rodriguez first filed her lawsuit. There is simply no way in which that extraordinary tardiness can fit the contractual requirement that Occidental must "promptly notify" Allstate when it receives a "liability claim"—as it did in November 1992—and must also transmit the suit papers to Allstate. In light of that lengthy delay, it is clear that Occidental's post-verdict notice constitutes a breach of the Policy's notice provision, which was designated a condition precedent to coverage.

In that respect *Bankers Ins. Co. v. Macías*, 475 So.2d 1216, 1218 (Fla.1985) has taught:

A notice of accident in most insurance policies is a condition precedent to a claim. It was so designated in the policy in this case. Such a condition can be avoided by a party alleging and showing that the insurance carrier was not prejudiced by noncompliance with the condition. The burden should be on the party seeking an avoidance of a condition precedent.

And *Bankers, id.* explains the usual effect of an insured's failure to satisfy that condition precedent:

If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice.

At a minimum, then, Occidental's failure to comply with the notice provision created a presumption of prejudice sufficient to relieve Allstate of its duties under the Policy, thus shifting the burden to Occidental to demonstrate that its tardiness did not in fact prejudice Allstate. But the district court went one step further and concluded that under the

circumstances Allstate was prejudiced as a matter of law (Opinion at 647):

[U]nder Florida law, failure to notify an insurer of a claim until after an adverse judgment has been handed down is evidence of prejudice as a matter of law.

Occidental and Chavez contend that prejudice is rather a question of fact, so that the issue was inappropriate for resolution at the summary judgment stage. They urge that they should have been afforded an opportunity to adduce evidence sufficient to rebut the prejudice presumption. To be sure, whether an insurer has been prejudiced by the insured's failure to provide timely notice is often a factual question. But where as here the relevant facts are not in dispute and where as here notice was not given until after judgment was entered against the insured, there are a substantial number of cases from jurisdictions around the country that hold that prejudice exists as a matter of law—exemplary of such cases are *Allstate Ins. Co. v. Kepchar*, 592 N.E.2d 694, 698–99 (Ind.Ct.App.1992); *Lusalon, Inc. v. Hartford Accident & Indem. Co.*, 23 Mass.App.Ct. 903, 498 N.E.2d 1373, 1375 (1986), *aff'd on other grounds*, 400 Mass. 767, 511 N.E.2d 595, 598 n. 9 (1997); *Hunt v. Ford Motor Co.*, 1995 WL 523646, at *4 and n. 3, reported in table at 65 F.3d 178 (10th Cir.1995) [6]; and other cases cited in each of those decisions. We ourselves have relatedly said in *Preferred Mut. Ins. Co. v. Travelers Cos.*, 127 F.3d 136, 137 (1st Cir.1997):

[C]onstruction of insurance contracts and application of their terms to established facts are matters of law, ultimately for us.

We have already said that Occidental's delay was not of the modest type most frequently encountered, when an insurer contends (for example) that its ability to investigate a covered occurrence has been hampered by its not having been brought into the picture as soon as the insured learned that a claim might be made. That type of situation does indeed present a factual question of reasonable notice, as *Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla.Dist.Ct.App.1981) has explained re-

6. Tenth Circuit rules now permit citations to an unpublished opinion "if the opinion has persua-

sive value on a material issue" (General Order of Nov. 29, 1993).

**6**

garding the other facet of the Policy's Condition 11 notification requirement:

> Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise.

Quite to the contrary in this case, prejudice to Allstate is the inevitable consequence of Occidental's failure to provide it with any notice of the lawsuit until *after* the entry of a large adverse judgment against Occidental. By the time that Allstate finally received notification, it was confronted with an established liability of $200,000 plus attorneys' fees and costs totaling more than $420,000. Occidental did not offer any justification for its nearly three year delay, which thwarted the essential purposes of the notification requirement. As the district court correctly observed (Opinion at 647):

> Where the insurer has not been notified of a pending claim until after judgment, it is deprived of its ability to investigate the allegations, to locate witnesses, to appoint counsel of its choice, to negotiate a settlement, and to develop its own trial strategy.

It is frankly difficult to imagine how Allstate could have suffered greater prejudice from the clear breach of its contractual right to prompt notice. We hold that Occidental's extraordinarily tardy notice not only breached the Policy's notice provision but also prejudiced Allstate as a matter of law, thus relieving it of any duty to defend the Rodriguez suit on appeal or to indemnify Occidental and Chavez for the judgment rendered against them.

### Conclusion

There is no genuine issue of material fact, and the district court correctly determined that Allstate was entitled to a judgment as a matter of law. Its Rule 56 motion was properly granted, while the Occidental–Chavez motion was of course properly denied. We **AFFIRM**.