Hawkins v. Mary Hitchcock Memorial    CV-99-113-M    01/30/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Georgeanna Hawkins,
     Plaintiff

     v.                                    Civil No. 99-113-M
                                           Opinion No. 2001 DNH 018
Mary Hitchcock Memorial Hospital,
     Defendant


**O R D E R**


     Pursuant to Title VII of the Civil Rights Act of 1964, see

42 U.S.C. § 2000e, et seq. (1994) (Title VII), Georgeanna Hawkins

alleges Mary Hitchcock Memorial Hospital (the Hospital)

discriminated against her because of her race when it failed to

hire her for a position on the Hospital's housekeeping staff.

The Hospital moves for summary judgment (document no. 9).


**Factual Background**

     The relevant undisputed facts can be summarized as follows:

     Georgeanna Hawkins applied for a housekeeping position at

the Hospital on three separate occasions in 1996, 1997, and

1998.[1]  When she first applied, Hawkins was living in New York

City, but planned to move to New Hampshire.  She completed a

standard application form and mailed it to the Hospital.  The

form did not seek information about an applicant's race or color.

Hawkins was not interviewed relative to her 1996 application.

She reapplied a year later and was again not granted an

interview.

In March 1998, Hawkins wrote to Wayne Weiner, Director of

Employee Relations at the Hospital and complained that she was

not hired because of her race.  See Plaintiff's Objection to

Summary Judgment, Ex. K (document no. 10).  Weiner responded,

informing her that the Hospital is "an equal opportunity

employer" and that "race, nationality, sex, religion and

disability status are not used to screen applicants."  See Pl.

Obj. to Sum. J., Ex. L.  He went on to explain that work

experience, relative education, and past employment history are

---

[1]The complaint states that Hawkins applied to the Hospital on two occasions, not three.  Complaint ¶ 4.  However, the record reveals she applied in 1996, as well as in 1997 and 1998.  See Plaintiff's Objection to Summary Judgment ¶ 14 (document no. 10).

major criteria the Hospital considers when selecting applicants for interviews.  See id.

In late September 1998, Hawkins applied a third time, noting on her application:

> P.S. And I [sic] not going to fill anymore applications out, or update them, because your office is not looking at the records, or is discriminating, and I am going to write the head of the hospital about how you'll [sic] are doing me. [A]nd I will file a claim against your hospital for discrimination, if something is not done about my application.

Pl. Obj. to Sum. J., Ex. M.  At the same time, she wrote to William Geraghty, Vice President of Human Resources for the Hospital, expressing her belief that the Hospital was discriminating against her based on race.

On September 24, shortly after submitting her third application, Hawkins was interviewed by David Hughes, an employment counselor at the Hospital.  Later, on October 15, she was interviewed by Raymond Bill, Assistant Director of Housekeeping.  By letter dated October 26, 1998, Geraghty wrote to Hawkins.  Referencing her earlier letter, received on September 21, Geraghty informed her that she was "not appropriately qualified for a position . . . based on the

3

evaluation of [her] two interviews, how [she] interacted with the staff, and [her] references."

On December 18, 1998, Hawkins filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  The EEOC issued a Right to Sue letter, and she filed this suit on March 19, 1999.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling upon a party's motion for summary judgment, the court must view the entire record "in the light most favorable to the nonmoving party, and draw all reasonable inference in the nonmoving party's favor."  LeBlanc v. Great American Insurance Co., 6 F.3d 836, 841 (1st Cir. 1993).  The court need not, however, credit conclusory allegations, improbable inferences, or unsupported speculation.  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

4

The burden is initially on the moving party to show "an absence of evidence to support the nonmoving party's case."  Id. (internal quotation marks and citation omitted).  Once such a showing is made, the burden shifts to the nonmoving party who must present facts showing a "genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

In addition to being a genuine dispute, the disputed fact or facts must be material, which is determined by the substantive law.  Id.  The substantive law of Title VII discrimination claims, whether at trial or on a motion for summary judgment, involves the well-known burden-shifting scheme set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which places the initial burden on the plaintiff to establish a prima facie case of discrimination.  This is not an onerous task and once it is accomplished, the burden shifts to the employer to articulate a non-discriminatory reason for the action taken. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254

(1981).  The burden on the employer is one of production – a minimal burden under which the employer is not required to prove that the proffered reason was the actual reason for the action taken, but must merely state a valid reason.  Id. at 255.  If the employer is able to articulate a valid reason, the burden shifts back to the plaintiff who must put forth specific evidence supporting a claim that the articulated reason is more likely than not a pretext for discrimination.  Id. at 258.  At all times, the burden on the plaintiff is one of persuasion.

## Discussion

The Hospital moves for summary judgment claiming Hawkins has failed to make out a prima facie case of discrimination.  In the alternative, the Hospital asserts that it has articulated legitimate business reasons for refusing to hire Hawkins and that she has failed to meet her resulting burden to show the Hospital's reasons are more likely than not a pretext for race discrimination.

To make out a prima facie case of race discrimination, plaintiff must assert four elements:

6

(1)  she belongs to a protected class;
(2)  she applied for and was qualified for a job for which the defendant was seeking applicants;
(3)  she was rejected; and
(4)  after rejecting the plaintiff, the position remained open and the defendant continued to seek applications with the same qualifications.

See, e.g., McDonnell Douglas, 411 U.S. at 802.  It is undisputed that Hawkins is an African-American woman, and a member of a protected class.  It is also undisputed that she applied for an open position on the Hospital's housekeeping staff; that she was rejected; and that the Hospital continued to seek qualified applicants for that open position (or similar positions).  The dispute here relates to whether the Hospital rejected Hawkins based on her race or because it found her unqualified.

Pointing to Hawkins' admission that she experienced back pains while performing some housekeeping tasks while working at a hotel, the Hospital initially contends that she cannot make out a prima facie case because she is not qualified for the position.  Additionally, although Hawkins argues that the minimum qualifications for the job are "an eighth grade education; some related experience; [and] the ability to read and write,"  Pl. Obj. to Sum. J. at 13-14, Hughes' deposition testimony reveals

7

that, in addition to some education and the ability to read and write, the Hospital's screening process includes looking for "a good solid continual work background, something that may be related experience."  Pl. Obj. to Sum. J., Ex. S at 20.

Hawkins' application, and her deposition testimony, reveal that she was not employed between November of 1989 and November 17, 1997.  Pl. Obj. to Sum. J., Ex. M; Pickett First Aff., Ex. A at 88.  Before November of 1989, she had been employed by South Bronx Housekeeper Vendor (South Bronx) for approximately eight months.  Moreover, according to her 1998 application, before working for South Bronx, she last worked between 1983 and 1984. She allegedly left that position because she "got a job . . . with better benefits," Pl. Obj. to Sum. J., Ex. M, but she did not list that job on any job applications.  Therefore, the Hospital's rejection based on qualifications would appear plausible, and it is certainly arguable that plaintiff has not met her initial burden to make out a prima facie case, because she has not shown that she is "qualified" for the position (i.e. absence of a "good solid continual work background").

However, since the initial prima facie burden is so low, and the qualifications for the position are fairly basic, for purposes of this motion the court will assume plaintiff established a prima facie case. That assumption operates to shift the burden to the Hospital to articulate a legitimate (non-discriminatory) reason for failing to hire Hawkins. The Hospital has articulated many such reasons.

In his letter, dated September 26, 1998, Geraghty informed Hawkins she would not be hired based on her interviews, her interaction with hospital staff, and her references. Geraghty Aff., Ex. J. The Hospital also points to her "sporadic work history with large gaps in employment," and it elaborates on the reasons given in Geraghty's letter.[2] For example, the Hospital documents two unfavorable references: one from South Bronx, Hawkins' last known employer before moving to New Hampshire, and one from the local Radisson Inn where Hawkins was briefly employed in 1997. The former, a form reference card received in connection with Hawkins' 1996 application, rated Hawkins "below

_____

[2]The Hospital also points out that Hawkins' race was unknown when she applied in 1996, yet she was similarly rejected (not invited to interview).

9

average" regarding work quantity and interpersonal skills and "unsatisfactory" regarding work quality, independence, attendance, and initiative. Hughes Aff., Ex. A. Hughes has submitted, by affidavit, a similarly negative telephonic reference from the Radisson Inn where Hawkins was employed for three weeks in 1997.[3] Hughes Aff., Ex. D.

The record also includes copies of email messages, the veracity of which have been attested to by affidavit, written by Hughes and Bill following their interviews of Hawkins. Hughes describes his impression of Hawkins' apparent inability to concentrate on questions for very long and found her "scattered in her responses." Hughes Aff., Ex. C. He also reported that she "tended to give contradictory answers" and concluded that "[s]he would do better in a more self controlled (time and duties) type of job similar to what she is doing now." Id. Bill noted his "concern[] that she seemed very deliberate when talking

_____

[3]During Hawkins' September 1998 interview, Hughes became aware of Hawkins' employment at the Radisson Inn (which was not mentioned in her application). Hughes Aff., ¶ 11, Ex. C, D. Following the interview, Hughes telephoned the hotel and was informed that she was considered a "voluntary quit" because she had failed to show up for work, or call in, three shifts in a row. Id.

about tasks and how sometimes she would skip things to get through her assignment." Bill Aff., Ex. A. He also related her disclosure of having had prior back pain experiences when she was required to change beds while working at a hotel, "a task that she would be required to do on weekends." Id.

The Hospital's articulated reasons for rejecting Hawkins' application are valid, non-discriminatory business reasons for not hiring someone. The burden thus shifts back to Hawkins to demonstrate that it is more likely than not that the Hospitals' given reasons are pretextual, and that discriminatory animus played a role in the decision not to hire her.

This case raises issues similar to those resolved in Gadson v. Concord Hospital, 966 F.2d 32 (1st Cir. 1992). In Gadson, an African-American man alleged discrimination when he was not hired as a dishwasher at Concord Hospital, purportedly because of conflicting applications, a history of short-term employment, and poor references. Id. at 34. The plaintiff in that case sought to prove pretext by arguing that he had satisfactorily explained his employment history, that he was "purposely put off" when he followed up on his application, and was led to believe he was

11

going to be hired.  <u>Id.</u> at 34-35.  He further argued that, statistically speaking, Concord Hospital only needed to hire two minorities to satisfy its non-discrimination policy.  <u>Id.</u> at 35.

The Court of Appeals affirmed an order granting summary judgment, finding Gadson's arguments insufficient to meet his burden to show pretext, and noting that the burden cannot be met "simply by questioning [the] articulated reason."  <u>Gadson</u>, 966 F.2d at 35.  Gadson's offered statistics also failed to satisfy his burden because there was no "indication of a connection between the statistics, the practices of Concord Hospital and Gadson's case."  <u>Id.</u>

Similarly, in this case, Hawkins offers the following "evidence" of pretext:

3.   she was never allowed to meet any of the staff;
4.   she was absent from the work force for several years to raise her son and to take care of an ailing aunt;
5.   she has positive references;
6.   there is only "mere paper compliance with EEOC guidelines" at the Hospital;
7.   her back pain is only associated with hotel work;
8.   she meets the minimum requirements for the job;
9.   the interview went so well she believed she had the job; and
10.  statistics show very few minorities on the Hospital housekeeping staff.

12

Plaintiff's contention that she never met any staff members - thus challenging Geraghty's statement that her interaction with staff was a factor in the decision not to hire - is contradicted by her own deposition testimony. Pickett First Aff., Ex. A. at 165.[4] And, while plaintiff did obtain some positive recommendations, including a 1997 recommendation from South Bronx more favorable than the 1996 recommendation by the same supervisor, the fact still remains that the Hospital did receive and consider poor references. The favorable recommendations are factors to be considered as well, but some favorable references, along with negative ones, does not go very far in establishing that the hiring decision was a pretext for race discrimination. "It is not a court's role to second guess the business decisions of an employer." LeBlanc v. Great American Insurance Co., 6 F.3d 836, 846 (1st Cir. 1993) (internal quotation marks and citations omitted). Further, that plaintiff provided a plausible

---

[4]That portion of Hawkins' deposition reads as follows:
Q: But my only question is, [y]ou did have interaction with staff. Whether or not you would characterize it as polite or not polite, you did have interaction with them, right?
A: Just those secretaries behind the desk.

13

explanation for her absence from the work force for roughly seven years also does little to support her claim that the hiring decision was pretextual.

Hawkins' different impression of her interviews, and her contention that her back problems would not interfere with housekeeping work, also add little support to a claim of pretext. Even if the interviewers' impressions were wrong, Hawkins' contrary and "correct" impressions still do not show pretext. See Gadson, 966 F.2d at 35 ("Indeed, even if the hospital were wrong in its interpretation of Gadson's work record and even assuming it unfairly disregarded Gadson's explanation concerning his prior employment, this would be insufficient to show pretext of a discriminatory intent.")

Plaintiff's allegation that "mere paper compliance with the EEOC guidelines" exists at the Hospital is similarly unhelpful in meeting her burden. In addition to some statistical evidence (discussed below), Hawkins relies on the following to support her allegation:

> 1. Bill, a supervisory employee, could not define a minority and was not aware of any affirmative action workshops at the hospital; and

14

> 2. a portion of Hughes' deposition "clearly demonstrates" that "there is no discernable [sic] implementation plan."

Pl. Obj. to Sum. J. at 3-5.

A fair reading of Hughes' and Bill's depositions suggests Hawkins' interpretation of the testimony is flawed. But even assuming the absence of an "implementation plan," and that Bill was unable to define a minority and was unaware of affirmative action workshops at the Hospital, the record still would not support a claim that the reasons given for not hiring Hawkins were pretextual for discriminatory animus.

Finally, while Hawkins' statistical evidence is not as readily comparable to the statistical evidence offered in Gadson, it is similarly lacking in persuasive value. The "usefulness [of statistical evidence] depends on all of the surrounding facts and circumstances." International Bhd. of Teamsters v. United States, 431 U.S. 324, 339 (1977). The completeness of the evidence is also a factor to be considered. See, e.g., McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 303 (1st Cir. 1998).

15

The statistics offered by Hawkins purport to disclose the number of minorities employed in the Hospital's housekeeping department, the number of overall employees in that department in 1996, 1997, 1998, and 1999 (to July 1999), and the number of minorities in housekeeping hired or terminated during the same period, compared to the overall number of housekeeping employees hired or terminated.  Apparently, between 1996 and July 1999, minorities comprised approximately 1 - 2.5%[5] of the housekeeping staff.  During the same time, although no new minorities were hired in the housekeeping department until sometime in 1999, no minority employees were terminated from the housekeeping department.  While 1 - 2.5% is a small portion of the workforce, the record is silent regarding both the relative size of the minority population in the area, and the number of minority applicants for housekeeping positions.  Without comparative information, the significance of plaintiff's statistical presentations cannot be meaningfully evaluated.  And, it does not show that the Hospital's articulated business reasons for not

[5]Neither party presents the numbers in percentages. However, the number of minorities employed in housekeeping and the total number of employees in that department are presented.

16

hiring Hawkins are either false or pretextual for racial discrimination.

## Conclusion

For the reasons given, Hawkins has failed to meet her burden of showing that the reasons given by the Hospital for not hiring her were pretextual, and that racial discrimination played a role in the hiring decision. Accordingly, the Hospital's motion for summary judgment is granted.

The Clerk shall enter judgment in favor of the defendant and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 30, 2001

cc:  Nancy S. Tierney, Esq.
     Jeffrey S. Brody, Esq.

17