**BEATTY CARIBBEAN, INC., Plaintiff,**

v.

**VISKASE SALES CORPORATION, et al., Defendants.**

**No. CIV.99–2345 (RLA).**

United States District Court,
D. Puerto Rico.

Jan. 10, 2003.

Alvaro R. Calderón, Jr., San Juan, PR, for Plaintiff.

Roberto Boneta, Muñoz Boneta Gonzalez Arbona Benitez & Peral, San Juan, PR, for Defendants.

## ORDER DENYING MOTION TO DISMISS

ACOSTA, District Judge.

Defendant VISKASE SALES CORPORATION ("VISKASE") has moved the Court to dismiss the claims asserted against it in these proceedings on three distinct grounds. These are: improper venue, lack of *in personam* jurisdiction and failure to state a claim upon which relief can be granted. The Court having reviewed the memoranda and documents submitted by the parties hereby finds as follows.

### PROCEDURAL BACKGROUND

Plaintiff BEATTY CARIBBEAN, INC. ("BEATTY") filed the instant complaint claiming that VISKASE is liable under Puerto Rico's Law 75 of 1964, Tit. 10 Laws of P.R. Ann. § 278 et seq. (1997) because it unilaterally and without just cause terminated BEATTY's right to distribute VISKASE's products in the Dominican Republic. The complaint alleges, and defendant

so concedes, that the parties relationship is governed by a Distributor Agreement ("the Agreement") entered into by BEATTY and VISKASE's assignor, UNION CARBIDE CORPORATION, on May 20, 1983.

Pursuant to our standing order procedure for filing dispositive motions VISKASE filed a "Dispositive Motion Package", which included its Motion to Dismiss Pursuant to Rule 12(b)(2), (3) and (6) of the Federal Rules of Civil Procedure ("VISKASE's motion"), BEATTY's opposition thereto, VISKASE's reply and BEATTY's sur-reply. Inasmuch as the parties have included matters outside the pleadings together with the aforementioned filing, to wit copies of the Agreement, Puerto Rico State Department Certifications, correspondence and an affidavit, pursuant to Rule 12(b)(6), Fed.R.Civ.P., the Court will treat Viskase's motion to dismiss for failure to state a claim, as one for summary judgment, to be disposed of as provided by Rule 56 Fed.R.Civ.P. *See Boateng v. Inter-American Univ., Inc.*, 210 F.3d 56 (1st Cir.2000).

### VENUE

Defendant challenges venue in this jurisdiction and seeks dismissal in accordance with 28 U.S.C. § 1406(a) and Rule 12(b)(3) Fed.R.Civ.P. However, pursuant to 28 U.S.C. § 1391(a)(2) actions based on diversity jurisdiction such as the one presently before us may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred".

As further described below the issue present in this litigation arose from a commercial relationship that originated, subsequently developed and eventually partially concluded in Puerto Rico. Therefore, venue in this jurisdiction is proper inasmuch as there is a substantial connection between plaintiff's cause of action and this forum.

### IN PERSONAM JURISDICTION

■ Defendant having challenged our authority to exercise personal jurisdiction it becomes plaintiff's burden to prove the necessary facts to establish that defendant is indeed amenable to judicial proceedings in this forum. *Jet Wine & Sprits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 7 (1st Cir.2002); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42, 50 (1st Cir. 2002)

Absent an evidentiary hearing the court may determine *in personam* jurisdiction based on a *prima facie* review of the properly documented jurisdictional facts as presented by plaintiff. *Jet Wine & Spirits, Inc.*, 298 F.3d at 7. "[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir.2001) (citing *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43 (1st Cir.1993)). *See also Daynard*, 290 F.3d at 51 (court need not resolve disputed facts but rather accepts plaintiff's proffer in ascertaining adequacy of *prima facie* showing).

In diversity suits *in personam* jurisdiction over a non-resident defendant is determined according to the forum's applicable statute, *Jet Wine & Spirits, Inc.*, 298 F.3d at 7; *Daynard*, 290 F.3d at 51, which in this particular case is the Puerto Rico long-arm statute. *Pizarro v. Hoteles Concorde Int'l*, 907 F.2d 1256, 1258 (1st Cir. 1990); *Am. Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989); *Rosich v. Circus & Circus Enter., Inc.*, 3 F.Supp.2d 148, 149 (D.P.R.1998).

In pertinent part, the local long-arm provision reads as follows:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the [courts] shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico ...; or

(2) Participated in tortious acts within Puerto Rico....

P.R. Laws Ann. tit. 32, app. III, Rule 4.7(a)(1983).

Rule 4.7 expressly mandates that the claim asserted in the complaint "arise" from the contacts of the non-domiciled defendant with the forum. *Escude Cruz v. Ortho Pharm., Corp.*, 619 F.2d 902, 905 (1st Cir.1980). *See also Redondo Constr. Corp. v. Banco Exterior de España, S.A.*, 11 F.3d 3, 5 (1st Cir.1993) (specific jurisdiction over defendant present inasmuch as claim resulted from defendant's acts within forum); *Am. Express*, 889 F.2d at 1179 (defendant corporation's activities within Puerto Rico unrelated to the causes of action asserted); *Rosich*, 3 F.Supp.2d at 150 (plaintiff's injuries must be "connected with defendant's contacts with Puerto Rico"); *Pou v. Am. Motors Corp.*, 127 D.P.R. 810, 819 (1991) (*in personam* jurisdiction requires minimum contacts with the forum and that the claim be related to or arises from those contacts).

In other words, there must be a causal relationship between the defendant's activities within the forum and the claims asserted in the pleadings.

Whether certain events "arise out of" a nonresident defendant's actions within Puerto Rico is comparable or analogous to whether certain actions can be said to be the legal, or proximate cause of the injuries suffered by a plaintiff. This court has previously commented on the concept of legal causation.

*Pizarro v. Hoteles Concorde Int'l*, 907 F.2d at 1258.

Violations of Law 75 have been traditionally considered a tort inasmuch as the statute provides that termination of the relationship without just cause shall result in a "tortious act against the dealer" § 278b. *See A.M. Capens' Co.*, 74 F.3d at 321 and 323 (breach "considered a 'tortious act' " although also dubbed as "hybrid contract/tort action") and *Marina Indus., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 90, 1983 WL 204219 (1983) (termination deemed a "tortious act").

As further described below, plaintiff's operations are concentrated in Puerto Rico since it does not own or operate any facilities or assets elsewhere. The correspondence terminating the distribution in the Dominican Republic was mailed by defendant to BEATTY's local address. Therefore, the resulting tort, i.e., unjustified reduction of the territory, necessarily arose in Puerto Rico where the effects of the termination of the relationship are essentially felt.

Further, we find that by entering into the distribution agreement with plaintiff in Puerto Rico with its concomitant commercial relationship with BEATTY in Puerto Rico defendant has transacted business sufficient to comport with the Puerto Rico long arm statute provision as well as due process requirements since the outstanding claim arises precisely from the partial termination of their contract. *See Jet Wine & Spirits, Inc.*

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions. *See Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000). The party seeking summary judgment must first demonstrate

the absence of a genuine issue of material fact in the record. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Navarro v. Pfizer Corp.*, 261 F.3d 90, 94 (1st Cir.2000); *Grant's Dairy v. Comm'r of Maine Dep't of Agric.*, 232 F.3d 8, 14 (1st Cir.2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". *Lopez–Carrasquillo v. Rubianes*, 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## THE FACTS

Upon review of the parties' submissions the court determines that the following facts are not disputed.

On May 20, 1983 UNION CARBIDE CORPORATION ("UNION CARBIDE"), entered into a Distributor Agreement with plaintiff BEATTY whereby the latter was appointed an exclusive distributor of certain products (casings, films and equipment) listed in a schedule to the Agreement. At the time of the Agreement, UNION CARBIDE was a New York corporation having an office in Chicago, Illinois. BEATTY's appointment was for Puerto Rico, Jamaica, Dominican Republic, Haiti, Barbados, Trinidad, Tobago, Guyana, Surinam, Lesser Antilles, Aruba, Curacao and Bonaire ("the Territory").

The Agreement was subsequently assigned by UNION CARBIDE to VISKASE. VISKASE is a Delaware corporation with a principal place of business in Chicago, Illinois.

Article 15 of the Agreement provides for yearly successive terms, unless terminated by either party upon written notice given 60 days prior to expiration. The parties further agreed that the Agreement "shall be construed and interpreted and its performance shall be governed by the laws of the State of Illinois, as well as by the laws of the United States of America (including but not limited to, the Foreign Concept Practices Act.)".

On March 17, 1999, VISKASE advised BEATTY in writing that pursuant to Section 15 of the Agreement, it elected to terminate the same, effective on the anniversary date of May 20, 1999. In that correspondence, VISKASE further advised BEATTY that a new Distributor Agreement would be offered to BEATTY excluding the Dominican Republic. The complaint characterized that action as the elimination of the Dominican Republic from the Territory. Thereafter, VISKASE continued to sell products and to honor BEATTY's status as a distributor in all other markets mentioned in the Agreement's original definition of the Territory, including Puerto Rico.

## CHOICE OF LAW

Plaintiff advocates the application of Law 75 to the partial termination of the agreement over the parties' contractual

choice of law. Defendant, on the other hand, insists that Illinois law should prevail as specifically provided for in the agreement particularly because the termination only affects distribution of its products in the Dominican Republic.

Courts sitting in diversity are bound to apply the substantive law of the forum where the action is filed including its conflict of law principles. *Servicios Comerciales Andinos, S.A., v. GE Del Caribe,* 145 F.3d 463, 478 (1st Cir.1998); *Allstate Ins. Co. v. Occidental Int'l,* 140 F.3d 1, 3 (1st Cir.1998). The Puerto Rico Supreme Court has consistently resorted to the rules set forth in the Restatement (Second) of Conflict of Laws (1971) ("Restatement") for guidance in resolving issues of applicable law. *See Servicios Comerciales Andinos,* 145 F.3d at 479 (citing pertinent local Supreme Court cases). *See also Allstate Ins.,* 140 F.3d at 3; *A.M. Capen's Co., Inc. v. Am. Trading and Prod. Corp.,* 74 F.3d 317, 320 (1st Cir.1996).

Freedom of contract includes the right to choose applicable legal provisions to the established relationship. Allowing parties in multistate transactions to select in advance the applicable law helps them "foretell with accuracy what will be their rights and liabilities under the contract... In this way, certainty and predictability of result are most likely to be secured." Restatement § 187 cmt e.

The Restatement incorporated this freedom of choice as a general principle. However, the parties' autonomy in this regard is not limitless. According to § 187 of the Restatement the contractual selection will be upheld unless: "(a) the chosen state has no substantial relationship to the parties or the transaction" or "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue".

The parties' choice of Illinois law would pass muster under the first provision since VISKASE has its principal place of business in Chicago, Illinois.

On the other hand, a controversy remains as to whether Law 75 embodies a local "fundamental policy" and whether Puerto Rico "has a materially greater interest" than Illinois in disposing of the termination issue.[1]

### Law 75

Puerto Rico Distributorship Act, Law 75 of June 24, 1964, P.R. Laws Ann. tit. 10 § 278 *et seq.* (1997) ("Law 75") "governs the business relationship between principals and the locally appointed distributors/dealers for marketing their products. The statute was initially enacted to avoid the inequity of arbitrary termination of distribution relationships once the designated dealer had successfully developed a local market for the principal's products and/or services". *Irvine v. Murad Skin Research Labs., Inc.,* 194 F.3d 313, 317 (1st Cir.1999); *Euromotion, Inc. v. BMW of N. Am., Inc.,* 136 F.3d 866, 870 (1st Cir.1998); *Borschow Hosp. and Med. Supplies, Inc. v. César Castillo, Inc.,* 96 F.3d 10, 14 (1st Cir.1996); *R.W. Intern. Corp. v. Welch Foods, Inc.,* 88 F.3d 49, 51 (1st Cir.1996).

A "dealer" is defined in the statute as a "person... having effectively in his charge in Puerto Rico the distribution... or rep-

---

1. Apart from insisting on the contractual choice of law provision defendant has not pointed out any specific portion of Illinois law which would apply to the situation at hand nor to any policy concerns that would merit consideration under the Restatement analysis. Therefore, we shall focus our examination on whether any interest that Puerto Rico may have in the relationship is sufficient to trump the parties' contractual choice.

resentation of a given merchandise or service" P.R. Laws Ann. tit. 10, § 278(a) (1997) and a "dealer's contract" as a "relationship established between a dealer and a principal . . . whereby and irrespective of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of merchandise . . . on the market of Puerto Rico." § 278(b).

The Court of Appeals for the First Circuit has interpreted the dealer's definition to require that the substantial part of the dealer's business operate locally. Otherwise, Puerto Rico would have no valid interest in the application of the statute.

The alternative, that the phrase could simply refer to a company with a contractual right to distribute in Puerto Rico, regardless of the bulk of its business, is a less likely reading. First, under such circumstances, Puerto Rico would have little or no interest in providing the dealer with an additional remedy for the breach of contract, and second, Puerto Rico would face significant legal and practical problems regulating conduct outside its borders.

*A.M. Capen's Co., Inc. v. Am. Trading and Prod. Corp.,* 202 F.3d 469, 473 (1st Cir.2000).

■ The distributor must have consequential local presence for the statute to apply. In *Capen's* the local presence requirement was not met by the mere fact that Puerto Rico was a destination of the goods inasmuch as the distributor had "no employees, no office space or warehouses, and no assets in Puerto Rico [and][o]ther than the two or three times a year that an agent visits Puerto Rico to take orders directly, all other contact and orders are made through New Jersey, where Capen's maintains a place of business and is incorporated." *Capen's,* 202 F.3d at 475.

■ In enacting Law 75 the legislators were concerned with the inequities inherent in a commercial relationship between parties of disparate economic strength. Distributors had no meaningful leverage at the contractual stage and were impotent before manufacturers who displaced them after having successfully developed a market for their products. *Capen's,* 74 F.3d at 321. The Puerto Rico Supreme Court has explicitly indicated that "Act No. 75 unquestionably represents a **strong public policy** directed to level[ing] the contractual conditions between two groups financially unequal in their strength." *Medina & Medina v. Country Pride Foods, Ltd.,* 858 F.2d 817, 820 (1st Cir.1988) (emphasis ours) (response of Puerto Rico Supreme Court to certified question concerning Law 75) *Capen's,* 202 F.3d at 475; *Capen's,* 74 F.3d at 321

Through the enactment of Law 75 Puerto Rico has sought to safeguard local dealers from indiscriminate termination of their services as soon as they had successfully developed a lucrative business. "The legislative history clearly focuses on the problems faced by dealers in Puerto Rico who are terminated once they have invested in and created a favorable market for a principal's product." *Capen's,* 202 F.3d at 474; *Euromotion,* 136 F.3d at 870.

The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers . . . as soon as these have created a favorable market and without taking into account their legitimate concerns.

The Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico **is vital to the general economy of**

the country, to the public interest and to the general welfare. . . .

*Capens*, 202 F.3d at 474 (emphasis ours) (citing *Roberco, Inc. v. Oxford Indus., Inc.*, 122 D.P.R. 115, 121–22, 1988 WL 580769 (1988)) (quoting from the Statement of Motives, 1964 Laws of Puerto Rico 243–244).

In order to effectively safeguard the interests which prompted its enactment Law 75 proscribes waiver of its application. In pertinent part § 278b–2 of the statute specifically provides:

> The dealer's contracts referred to in this chapter shall be interpreted pursuant to and ruled by the laws of the Commonwealth of Puerto Rico, and any other stipulation to the contrary shall be void.

> Any stipulation that obligates a dealer to . . . litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

Based on the foregoing it may reasonably be concluded that Puerto Rico has explicitly enunciated its interest in regulating commercial relationships involving local distributors. We find that this interest applies to distributors such as BEATTY regardless of the fact that part of their commercial interests may extend beyond our geographical boundaries given the extent of their local presence. BEATTY is a Puerto Rico corporation. Its warehouse, headquarters, and all administrative and operation offices are also located in Puerto Rico. The Agreement was negotiated for the most part in Puerto Rico. All sales orders for the entire territory covered by the Agreement are placed from BEATTY's offices in Puerto Rico. Some of the products are shipped from BEATTY's warehouse in Puerto Rico and others directly by VISKASE to the clients.

Faced with the facts as presented in this case disregarding Law 75 would run contrary to fundamental policy of Puerto Rico whose interest in this issue surpasses the interest of Illinois which from the record before us sits merely as defendant's home state.

## Dormant Commerce Clause

◼ Given the undisputed interest of Puerto Rico in safeguarding the efforts of the local distributors in reaping the fruits of their efforts in developing a market the issue then becomes whether this interest may be legally extended to the distribution of products outside of Puerto Rico regardless of the parties' contractual choice of law.

According to the affidavit submitted by plaintiff which stands uncontested [exh. I to sur-reply] all of its operations, assets and employees are located in Puerto Rico and all business dealings are carried out locally. The declaration specifically states that "execution of [the] agreement is conducted through only one consolidated operation in Caguas, Puerto Rico." ¶ 7. The operations are described as follows:

> 6. This distribution agreement has always been executed exclusively in and from Puerto Rico. All sales orders from the entire territory of the agreement are placed in Beatty's office in Caguas, Puerto Rico, by fax, telephone or other electronic means.

Thus, in the particular situation before us even though the contract covers the distribution of products outside of Puerto Rico as a practical matter all substantive business undertakings in the execution of the contract are carried out locally. The fact that the products' destination is the Dominican Republic does not automatically wipe out Puerto Rico's interest in the rela-

tionship when virtually all of plaintiff's endeavors in the distribution process are concentrated in Puerto Rico.

The situation before us is similar to that of *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 F.3d 813 (4th Cir. 1994) inasmuch as the interests sought to be protected by Law 75 are affected regardless of the fact that the distribution is carried out outside Puerto Rico which allows for its extraterritorial application. *Instructional Sys.* dealt with an exclusive multi-state distribution contract for the northeastern United States between the principal, a Delaware corporation with headquarters in California, and the distributor, a New Jersey corporation. The contract for a five-year period provided for the application of California law to the relationship. Upon conclusion of the contract term the principal offered to extend the exclusive distribution rights to only part of the original territory including New Jersey. The distributor instituted suit claiming that the original agreement constituted a "franchise" under the New Jersey Franchise Practices Act ("NJFPA") and that the manufacturer was liable thereunder for having failed to renew the contract without just cause and for attempting to impose unreasonable standards of performance. The federal court attempted to reconcile the lawfulness of the extraterritorial application of the NJFPA and certified the issue to the New Jersey Supreme Court.

In discussing the interest of New Jersey in the relationship—even though termination did not affect the New Jersey distribution rights—the New Jersey Supreme Court reasoned as follows:

> [The defendant] attempts to split the contract into sales that occur in New Jersey and sales that occur in other states. However, the purpose behind franchise-act legislation is that dealers geographically situated in a forum state are to be the desired beneficiaries of the legislation in order to make their bargaining position more equal to the manufacturers. To strip away the spokes of the hub-type franchise would counter the purpose of such legislation.

*Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 135, 130 N.J. 324 (1992) (citations and internal quotations omitted).

The controversy in *Instructional Sys.* centered around the application of New Jersey's NJFPA to other states which triggered a possible conflict with what is commonly known as the dormant Commerce Clause. Pursuant to the Commerce Clause "Congress shall have [the] power . . . [t]o regulate Commerce . . . among the several States . . ." U.S. Const., art. I § 8 cl.3. "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst.*, 491 U.S. 324, 326 n. 1, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989). Because Congress was specifically conferred authority over interstate commerce states may not interfere therewith even in the absence of federal legislation. "This negative command, known as the dormant commerce clause, prohibits states from acting in a manner that burdens the flow of interstate commerce." *Pharm. Research and Mfrs. of Am. v. Concannon*, 249 F.3d 66, 79 (1st Cir.2001). Different standards of scrutiny will apply in examining the validity of the statute in question depending on whether it "directly controls commerce occurring wholly outside [the state's] boundaries" in which case there is a "per se violation of the Commerce Clause"; if it "discriminates against interstate commerce" in which case "strict scrutiny" will be applied, or if it "regulates evenhandedly

and has only incidental effects on interstate commerce" in which case the local interest will be compared to the burden on interstate commerce. *Pharm. Research,* 249 F.3d at 79–80. *See also* Catherine Gage O'Grady, *Targeting State Protectionism Instead of Interstate Discrimination under the Dormant Commerce Clause,* 34 San Diego L.Rev. 571 (May–June 1997)

As previously noted, the controversy in *Instructional Sys.* was the extended protection of the NJFPA to other states by virtue of the distribution agreement. In the case before us, however, the distribution at issue pertains to sales in the Dominican Republic which consequently does not impact on interstate commerce rendering the dormant Commerce Clause analysis inapposite. In other words shipment of products to the Dominican Republic falls outside the realm of interstate commerce limitations.

### Depeçage

One alternative route would be to apply the parties' choice of law selectively that is, only to a portion of the contract. Under choice of law principles, the courts have the discretion of applying laws from diverse states to different issues arising in a single litigation. This procedure is known as depeçage. "[D]ifferent substantive issues [can] properly be decided under the laws of different states when choice-influencing considerations differ as they apply to the different issues." Leflar, American Conflicts Law, § 96 at 280 (4th ed.1986). *See* Edward M. Borges, *Extraterritorial Application of State Law,* 18 Wtr Franchise L.J. 102, 104 (Winter, 1999) and Thomas M. Pitegoff, *Choice of Law in Franchise Relationships; Staying within Bounds,* 14–Spg. Franchise L.J. 89 (Spring, 1995) (advocating the use of this mechanism in situations similar to *Instr. Systems*).

Policy and fairness considerations, however, play a key role in its application. Even though the depeçage alternative is appealing at first blush, it would be impracticable in the case before us inasmuch as we would fragmentize a distribution mechanism that functions through a single consolidated operation. Further, we would be directly affecting paramount local policy concerns.

### CONCLUSION

Based on the foregoing, we find Law 75 applicable to the claims asserted in the complaint and therefore, defendant's Motion to Dismiss... (docket No. 15)[2] is hereby **DENIED.**

IT IS SO ORDERED.

---

2. *See also* Opposition to Defendant's Motion to Dismiss (docket No. **16**); Reply to Plaintiff's Opposition to Viskase's Motion to Dismiss (docket No. **17**) and Sur–Reply to Defendant's Reply... (docket No. **18**).