**A.M. CAPEN'S CO., INC.,**
Plaintiff, Appellee,

v.

**AMERICAN TRADING AND PRODUCTION CORPORATION, Blas Rossy–Asencio and Rafaela Fulana De Tal,
Defendants, Appellants.**

**A.M. Capen's Co., Inc., Plaintiff,**
Appellant,

v.

**American Trading and Production Corporation, Blas Rossy–Asencio and Rafaela Fulana De Tal, Defendants, Appellees.**

Nos. 98–2236, 98–2237.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1999.

Decided Feb. 8, 2000.

José Enrique Colón–Santana for appellants American Trading and Production Corporation, Blas Rossy–Asencio, Rafaela González–Ruiz, and their conjugal partnership.

Fernando L. Gallardo, with whom Woods & Woods and Philip E. Roberts were on brief, for appellee A.M. Capen's Co., Inc.

Before TORRUELLA, Chief Judge, WALLACE,* Senior Circuit Judge, and LYNCH, Circuit Judge.

TORRUELLA, Chief Judge.

For the second time, this Court is asked to determine whether the Puerto Rico Dealers' Act of 1964, 10 L.P.R.A. §§ 278a-d (1994) ("Act 75"), applies to the circumstances of this case. On appeal from entry of a preliminary injunction, a prior panel of this Court reached an initial determination that the claims of plaintiff-appellee, A.M. Capen's Co., Inc., against defendant-appellant, American Trading & Production Corp. ("ATAPCO"), were likely to be resolved in Capen's favor under the laws of Puerto Rico, specifically Act 75. *See generally A.M. Capen's Co. v. American Trading & Prod. Corp.*, 74 F.3d 317 (1st Cir.1996). However, on appeal from judgment below for Capen's, this Court must again consider whether Capen's is a dealer under Act 75. For the reasons further discussed in this opinion, we reverse the decision of the district court.

---

* Of the Ninth Circuit, sitting by designation.

As we observed in our recent opinion, *Triangle Trading Co. v. Robroy Industries, Inc.*, 200 F.3d 1, 1–2 (1st Cir.1999), there is much case law carving out the scope of Puerto Rico's dealership act. In order to honor the legislative intent of Act 75, the Puerto Rico and federal courts have taken steps to restrict the definition of who is a "dealer" within the broad framework of section 278(a). *See id.* at 4–5. We now take one more step down that path and hold that under the facts of this case, appellee fails to qualify for the remedies of the statute because it did not operate as a "dealer" in Puerto Rico.

## I.

The undisputed facts underlying this action are as follows. Capen's, a New Jersey corporation with its principal place of business in that state, entered into an agreement with ATAPCO's predecessor to be the exclusive distributor of Globe–Weiss and Steelmaster office products in Puerto Rico, along with thirty-seven other countries in the Caribbean and Central and South America. The arrangement continued after ATAPCO, whose principal place of business is Missouri, took over. However, the parties never signed a formal contract because they could not agree on choice-of-law and forum-selection clauses.

The negotiations took place in Missouri and New Jersey. Pursuant to the agreement, ATAPCO's products were shipped to Capen's in New Jersey. Capen's would generally take orders from its Puerto Rican customers in New Jersey via telephone or fax, although an agent would actually travel to Puerto Rico two to three times a year for that purpose. Capen's would then ship the products directly to its customers in Puerto Rico and send bills from New Jersey to Puerto Rico. Capen's did not advertise in Puerto Rico, nor did it maintain a warehouse, showroom, inventory, employees, office, address, or telephone number in Puerto Rico. Likewise, Capen's is not qualified to do business in Puerto Rico. *See A.M. Capen's Co. v. American Trading & Prod. Corp.*, 973 F.Supp. 247, 253–55 (D.P.R.1997).

In December 1993, ATAPCO terminated the exclusive aspect of the dealership, and it authorized Blas Rossy–Asencio as a sales representative for Puerto Rico effective January 1994.[1] The trial court entered a preliminary injunction in favor of Capen's on June 16, 1995, which this Court affirmed. *See A.M. Capen's*, 74 F.3d at 319. In July 1997, the district court resolved Capen's pending cross-motion for partial summary judgment on liability. First, the court observed that ATAPCO had failed to provide additional evidence on Capen's dealership status within the established time frame;[2] consequently, the court concluded that there was no reason to reconsider its original finding, based on the same record and affirmed by the court of appeals, that Act 75 covered Capen's dealership. *See A.M. Capen's*, 973 F.Supp. at 257–58. Then, based on the material facts it deemed admitted, the court found Act 75 liability against ATAPCO as a matter of law. *See id.* at 260. Damages were set after a bench trial, by opinion and order entered on March 31, 1998.[3] *See A.M. Capen's Co. v. American Trading & Prod. Corp.*, 12 F.Supp.2d 222, 224–30 (D.P.R.1998).

---

**1.** Capen's filed a separate tort action against Rossy–Asencio, which was consolidated with this case.

**2.** The Local Rules of the U.S. District Court for the District of Puerto Rico require that " '[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record.' " *A.M. Capen's*, 973 F.Supp. at 256 (quoting Local Rule 311.12). Because ATAPCO did not comply with Local Rule 311.12, the district court admitted Capen's statement of uncontested facts. *See id.* at 252.

**3.** Because we reverse on the finding of liability under Act 75, we need not reach the issue related to the damages award.

## II.

■■■■ Summary judgment is only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We normally review the district court's summary judgment *de novo*, "viewing 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" *Euromotion, Inc. v. BMW of N. Am., Inc.*, 136 F.3d 866, 869 (1st Cir.1998) (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990)); *see also Morris v. Government Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). However, in this case, the district court properly admitted the uncontested facts submitted by the plaintiff-appellant when ATAPCO failed to comply with the local rules and oppose the motion in the appropriate form.[4] *See A.M. Capen's*, 973 F.Supp. at 256 (citing *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930–31 (1st Cir.1983)). Because we limit our review to "the record as it stood before the district court at the time of its ruling," *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1250 (1st Cir.1996) (citing *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir.1985)), there are no facts in dispute.[5]

■■■■ Consequently, the only matter before the Court is the applicability of Act 75,[6] a matter we previously considered and provisionally affirmed. ATAPCO argues that we are not bound by our earlier decision which was rendered as a preliminary opinion for the purposes of reviewing an injunction. In this case, because the record was fully developed before the first panel, there is a tension between the limited binding authority of a decision regarding a preliminary injunction and the law of the case doctrine. *See Cohen v. Brown University*, 101 F.3d 155, 167 (1st Cir. 1996) (citing 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404[1] (2d ed.1993)), *cert. denied*, 520 U.S. 1186, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997); *see also Ackerley Communications of Mass., Inc. v. City of Cambridge*, 135 F.3d 210, 213–15 (1st Cir.1998) (implying that legal opinion was law of case in preliminary injunction setting where facts were undisputed). However, the law of the case doctrine only directs our discretion; it does not limit our power. *See Arizona v. Cali-*

---

**4.** We review case management decisions for abuse of discretion. *See Rosario–Díaz v. González*, 140 F.3d 312, 315 (1st Cir.1998). Where a district court has established a local rule, such as the "anti-ferreting" rule adopted by the district court in Puerto Rico, requiring the movant to supply the court with a list of uncontested facts and the nonmovant to reply with a counter list of genuine facts in dispute, both supported by specific citations to the record, "a party's failure to comply, would, where appropriate, be grounds for judgment against that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 931–32 (1st Cir.1983). Accordingly, we find no error in the district court's refusal to extend ATAPCO more time to submit evidence in opposition to summary judgment on Act 75 liability.

**5.** On appeal, ATAPCO challenges the statistical evidence submitted to represent Capen's sales of ATAPCO's products in Puerto Rico. ATAPCO relies solely on evidence presented in the damages trial. However, as we already

discussed above, the district court's decision not to reconsider the matter after judgment had been entered was not an abuse of discretion. ATAPCO's argument that we should on our own initiative take up evidence introduced at the damages trial is unavailing. We will not consider new evidence now. *See Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 96 n. 6 (1st Cir.1996) (citing *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir.1996)); *J. Geils Band*, 76 F.3d at 1250.

**6.** Capen's also appealed the district court's choice of law determination. Since we hold that Act 75 does not apply, and Puerto Rico law on this issue is identical to Missouri and New Jersey law-the other forums that might have an interest-there is no conflict of law. *See Steinke v. Sungard Fin. Sys., Inc.*, 121 F.3d 763, 775 (1st Cir.1997) ("We need not resolve [the choice of law] issue, however, [if] 'the outcome is the same under the substantive law of either jurisdiction.'") (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir.1993)).

*fornia,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *see also Cochran v. M & M Transp. Co.,* 110 F.2d 519, 521–22 (1st Cir.1940) (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). Two traditional considerations weigh in favor of reopening our initial determination. First, as we acknowledged in our prior opinion, " 'conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes,' rather than as comprising the law of the case." 74 F.3d at 322 (quoting *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 6 (1st Cir.1991)). Thus, it is implicit that "a party losing the battle on likelihood of success may nonetheless win the war at a succeeding trial on the merits." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 238 (1st Cir.1986). Second, we review an award of a preliminary injunction only for abuse of discretion. *See A.M. Capen's,* 74 F.3d at 319. Therefore, the scope of review given a case that comes to us in the posture of a preliminary injunction is more deferential than that given to one which comes to us on appeal from final judgment. *See, e.g., Rodríguez–Burgos v. Electric Energy Auth.,* 853 F.2d 31, 37 (1st Cir.1988) (considering case upholding a permanent injunction); *Goyco de Maldonado v. Rivera,* 849 F.2d 683, 686 (1st Cir.1988) (distinguishing case heard on appeal from issuance of interim injunction); *Rosario Nevárez v. Torres Gaztambide,* 820 F.2d 525, 527 (1st Cir.1987) (noting that review is limited to plaintiff's likelihood of success, and not a "clear-cut ruling," on the merits).

### III.

Thus, we turn to Capen's status as a dealer under Act 75. In departing from the legal determination of our colleagues in this circuit, we take into account that the initial decision was not intended to be binding, and that the court did not fully contemplate the meaning of dealer under the Act, but rather considered the Act only in the context of Puerto Rico's interest in the action. *See A.M. Capen's,* 74 F.3d at 321–22.

■ In a statutory construction case, we begin with the language of the statute, and only if the language is ambiguous or leads to an unreasonable interpretation do we turn to the legislative history and other aids. The words that are not defined within the statute are given their ordinary meaning, with all due consideration to the context. *See Brady v. Credit Recovery Co.,* 160 F.3d 64, 66 (1st Cir.1998); *Grunbeck v. Dime Sav. Bank,* 74 F.3d 331, 336 (1st Cir.1996); *Riva v. Massachusetts,* 61 F.3d 1003, 1007 (1st Cir.1995).

■ Act 75 defines a dealer as: "a person actually interested in a dealer's contract because of his having effectively in his charge *in Puerto Rico* the distribution, agency, concession or representation of a given merchandise or service." 10 L.P.R.A. § 278(a) (emphasis added). Although the underscored text does not explicitly "require[ ] a dealer to be a resident of Puerto Rico, to be authorized to do business in the Commonwealth, or to have a place of business such as an official showroom or warehouse on the Island," as do the comparable statutes in New Jersey and Missouri, *A.M. Capen's,* 74 F.3d at 322, it does strongly suggest that the dealer must operate in Puerto Rico under similar requirements. The alternative, that the phrase could simply refer to a company with a contractual right to distribute in Puerto Rico, regardless of the locale of the bulk of its business, is a less likely reading. First, under such circumstances, Puerto Rico would have little or no interest in providing the dealer with an additional remedy for the breach of contract, and second, Puerto Rico would face significant legal and practical problems regulating conduct outside its borders.

While we gain no additional insight from

the definition of a dealer's contract,[7] the legislative history confirms an interpretation of "in Puerto Rico" that incorporates requirements that an Act 75 dealer be located in, be a resident of, or be authorized to do business in Puerto Rico.[8] The statement of legislative purpose for Law 75 reads:

> "The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers ... as soon as these have created a favorable market and without taking into account their legitimate concerns.
>
> The Legislative Assembly of Puerto Rico declares that the reasonable stability in the *dealer's relationship in Puerto Rico* is vital to the general economy of the country, to the public interest and to the general welfare . . . ."

*Roberco*, 122 D.P.R. at 121–22, 22 Offic. Trans. at 113–14 (emphasis added) (quoting 18–3 *Diario de Sesiones* 1531 (1954)). In addition, "the Industry and Commerce Committee submitted a report recommending the bill's approval as a means to tackle the problem of termination of a dealer's contract without just cause, in prejudice to the local dealer, who 'has created a favorable market for the products, and ... has effectively assumed his responsibilities.' " *Id.* (quoting 18–3 *Diario de Sesiones* 1531).

The legislative history clearly focuses on the problems faced by dealers in Puerto Rico who are terminated once they have invested in and created a favorable market for a principal's product. *See Draft–Line*

*Corp. v. Hon Co.*, 781 F.Supp. 841, 843–44 (D.P.R.1991), *aff'd,* 983 F.2d 1046 (1st Cir. 1993); *see also Franceschini*, 591 F.Supp. at 415 ("The scant legislative history of the statute refers solely to the problems faced by dealers in Puerto Rico who created a favorable market. . . ."); *Roberco*, 122 D.P.R. at 121–22, 22 Offic. Trans. at 113–14 (discussing legislative intent to protect local dealers). The courts that have interpreted the statute and its legislative history uniformly conclude that the statute was enacted to prevent "economic exploitation of local dealers." *A.M. Capen's*, 74 F.3d at 321 (quoting *Draft–Line*, 781 F.Supp. at 844); *see also Roberco*, 122 D.P.R. at 121, 22 Offic. Trans. at 113 ("Act 75 was created to avoid the harm resulting from the practice of some manufacturers who arbitrarily break with local dealers"); *J. Soler Motors, Inc. v. Kaiser Jeep Int'l Corp.*, 108 D.P.R. 134, 8 P.R. Offic. Trans. 138, 143, 1978 WL 48795 (1978) (Act 75 "has the purpose of protecting the Puerto Rican intermediaries"). Because there is no evidence to the contrary, we similarly ascertain that the legislature sought to protect the interests of commercial distributors working in Puerto Rico. *See A.M. Capen's*, 74 F.3d at 321 (citing *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 797 F.Supp. 103, 106 (D.P.R.1992)).

Based on the facts before us, we cannot conclude that Capen's operates "in Puerto Rico" for purposes of Act 75. Capen's presence in Puerto Rico is almost nonexistent; Puerto Rico is merely one of the destination markets for the ATAPCO goods that it distributes. Capen's has no

---

7. The Act defines dealer's contract as a "relationship established between a dealer and a principal or grantor whereby ... the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico." 10 L.P.R.A. § 278(b).

8. The Supreme Court of Puerto Rico has recognized the insufficiency of the statutory definition of dealer and has found it necessary to examine the legislative history of Act 75.

*Mario R. Franceschini, Inc. v. Riley Co.*, 591 F.Supp. 414, 415–16 (D.P.R.1984) (commenting that the Supreme Court of Puerto Rico found the definition to be "sketchy") (citing *J. Soler Motors v. Kaiser Jeep Int'l*, 108 D.P.R. 134, 8 P.R. Offic. Trans. 218, 1978 WL 48795 (1978)); *Roberco, Inc. Y Roberto Colón v. Oxford Indus., Inc.*, 122 D.P.R. 115, 121–22, 22 Offic. Trans. 107, 114–15, 1988 WL 580769 (1988) (observing that Act 75 defines dealer in "broad and imprecise terms").

employees, no office space or warehouses, and no assets in Puerto Rico. Other than the two or three times a year that an agent visits Puerto Rico to take orders directly, all other contact and orders are made through New Jersey, where Capen's maintains a place of business and is incorporated.

## CONCLUSION

After careful consideration and review, based on the parties' limited connection to Puerto Rico, we conclude that Act 75 should not apply to this case. We therefore reverse and remand for proceedings consistent with this opinion.