**A.M. CAPEN'S CO., INC., Plaintiff,**

v.

**AMERICAN TRADING AND PRODUCTION CORPORATION, et als., Defendants.**

**CIVIL NO. 94–1367(DRD).**

United States District Court, D. Puerto Rico.

March 28, 2002.

Fernando L. Gallardo, Antonio Borres-Otero, Woods and Woods, San Juan, PR, for plaintiff.

Joes E. Colon-Santana, San Juan, PR, for defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

From the very beginning, in 1994, it has been clear that this case presents issues of great difficulty, both factually and legally. On repeated occasions the Court has expressed that the issues being adjudicated here are extremely close. Now the duel has reached its climax.

Pending before the Court at this stage are several motions.[1] After closely and carefully examining the record, the Court has reached a conclusion. For the reasons set forth below, this case is **DISMISSED**.

## I

The factual and procedural background of this case has been restated and reported extensively on previous occasions. See in chronological order, *A.M. Capens Co. v. American Trading and Prod. Corp.*, 892 F.Supp. 36, 38 (D.Puerto Rico 1995); *A.M. Capen's Co. v. American Trad. & Prod.*

---

**1.** Namely, Plaintiff's Motion to Show Cause as to Why the Case Should Not Be Dismissed, (Docket No. 164); Plaintiff's Motion Requesting Execution of Judgment (Docket No. 165); Defendants' Opposition to Motion as to Why Case Should Not be Dismissed in Accordance With Post Judgment Scheduling Orders (Docket No. 166); Plaintiff's Reply to Opposition as to Why Case Should Not Be Dismissed (Docket No. 167); ATAPCO's Statement as to Why this Court Must Deny A.M. Capen's Request for Execution of Judgment (Docket No. 168); Plaintiff's Memorandum in Support of Plaintiff's Motion for Execution of Judgment (Docket No. 171); Defendants' Memorandum of Law in Support of Inexistence of Liability in the Case Under Puerto Rico's Civil Law (Docket No. 173 & 174); Defendants' Motion Submitting Recent Jurisprudence in Support of Inexistence of Liability in the Case Under Puerto Rico's Civil Law (Docket No. 178); and Plaintiff's Reply to Motion About Jurisprudence (Docket No. 179).

*Corp.*, 74 F.3d 317 (1st Cir.1996)(Bownes, J.); *A.M. Capen's Co. v. American Trading and Production*, 12 F.Supp.2d 222 (D.Puerto Rico 1998); *A.M. Capen's Co., Inc. v. American Trading*, 202 F.3d 469 (1st Cir.2000)(Torruella, J.). The Court will, however, highlight the key factual and procedural factors that justify dismissal.

Since 1978, Plaintiff, A.M. Capen's Co., Inc. ("Capen's") allegedly served as Defendant's, American Trading and Production Corp. ("ATAPCO" or "the Defendants"), "exclusive distributor"[2] for Puerto Rico of ATAPCO's products. "However, the parties never signed a formal contract because they could not agree on choice-of-law and forum-selection clauses." *A.M. Capen's Co., Inc.*, 202 F.3d at 471. Their agreement was confirmed through a letter. The agreement letter did not contain a fixed term, that is, it lacked an expiration date in the agreement.[3] In 1993, however, ATAPCO wrote a letter to Capen's in which it terminated the exclusive aspect of their dealership.[4] Therefore, in 1994, Capen's filed this action alleging, *inter alia*, that ATAPCO violated Puerto Rico's Dealer's Act ("Law 75"), 10 P.R. LAWS. ANN., § 278 et seq.[5]

Law 75 governs the business relationship between "principals" and the locally appointed "distributors" who market their products in Puerto Rico. *See Caribe Industrial Systems, Inc. v. National Starch and Chemical Co.*, 212 F.3d 26, 29 (1st Cir. 2000). Law 75 was enacted with the specific purpose of avoiding the inequity of arbitrary termination of distribution relationships once the distributor has developed a local market for the principal's products or services. As such, Law 75 limits the principal's ability to unilaterally end the relationship except for "just cause." 10 P.R. LAWS. ANN., § 278a. **The aspect of Law 75 which is critical here, however, is its definition of "dealer,"** which is defined as: "as a person actually interested in a dealer's contract because of his having effectively in his charge *in Puerto Rico* the distribution, agency, concession or representation of a given merchandise or service." *Id.*

The jurisdictional basis supporting Capen's suit in this Court is diversity jurisdiction. 28 U.S.C. § 1332. It is well known that in civil diversity jurisdiction, federal courts are to apply substantive state law, as if it were a state court.[6]

2. From the onset, the must note that First Circuit reversed the determination of this court that the relationship was one covered under Puerto Rico's Dealer's Act ("Law 75"), 10 P.R. LAWS. ANN., § 278 et seq. *See A.M. Capen's Co., Inc. v. American Trading*, 202 F.3d 469 (1st Cir.2000)(Torruella, J.)(to be fully discussed, *infra*).

3. Under Law 75, the lack of termination date in the dealer contract does not create any problems because said law protects all agreements, even those lacking a fixed term. 10 P.R. LAWS. ANN., § 278a. However, because there is no coverage under Law 75 here, the fact that the contract does not have a fixed date makes a considerable difference. See discussion *infra*.

4. The Court notes that only the **exclusive** aspect of their dealership was terminated. Not-

withstanding their longstanding differences and the extended litigation here, ATAPCO and Capen's continued—and **still continue**—to carry on a successful dealership relationship in the region.

5. In a separate complaint, latter consolidated, Capen's asserted an additional cause of action for **"tortious interference"** of its dealership against Blas Rossy, *et al.*, under Puerto Rico's general liability statute, 31 P.R. STAT. ANN., 5141. Blas Rossy is the additional dealer appointed by ATAPCO for Puerto Rico's market.

6. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although procedurally, federal courts are to apply the Federal Rules of Procedure.

From the outset, both parties began contesting what state law was applicable (choice-of-forum-law). Capen's, a New Jersey corporation with its principal place of business in that state, at all times alleged that Puerto Rico law is applicable. On the other hand, ATAPCO, with its principal place of business in Missouri, claimed that Missouri law was applicable. In fact, as stated before, the controversy regarding which state law controls their contractual and business relationship is the reason why they never signed a formal contract. *A.M. Capen's Co., Inc.*, 202 F.3d at 471.

As part of its complaint, Capen's sought provisional injunctive relief. Noting that the choice-of-law issues raised were a "close matter," this Court granted the provisional remedy requested by Capen's. A provisional injunction was issued, and judgment entered. *See A.M. Capens Co.*, 892 F.Supp. at 38. ATAPCO appealed.

## A. Round One.

On appeal, ATAPCO raised two issues: 1) "that Puerto Rico law does not apply;" and 2) "that [Capen's] is not a dealer under the Puerto Rico Dealer's statute." *See A.M. Capen's Co.*, 74 F.3d at 319 (emphasis added). Obviously, the second issue raised by ATAPCO on appeal—*i.e.*, that Capen's is not a "dealer" under Law 75—necessarily depended on his the first-*i.e.*, whether Puerto Rico law applied. Indeed, the Court adjudicated the first issue, made a determination and rendered an opinion. *See A.M. Capen's Co.*, 74 F.3d at 323.

The First Circuit Court focused its inquiry on whether the preliminary injunction issued by this Court met, *prima facie*, all federal requisites, and specifically whether this Court was correct in finding

that Capen's action had a probability of success on the merits. *See id.*, 74 F.3d at 319. Then, immediately, the Court addressed the issue of whether Puerto Rican law was applicable. *Id.* Relying on principles governing contract and tort law, Circuit Judge Bownes determined that Puerto Rico's law was applicable. In short, that Court found that the subject matter of the parties contract—i.e., a distribution agreement—pointed to Puerto Rico, because it was executed in Puerto Rico (contract principle); and moreover, because Capen's tortious injury—*i.e.*, the termination of agreement—occurred in Puerto Rico (tort principle), this factor also pointed to the conclusion that Puerto Rican law was applicable. *Id.*, at 320–321.

The First Circuit Court, however, cautioned that it was only making a *prima facie* determination "as to the merits of the issues presented on preliminary injunction" and that its holding was "to be understood as statements of probable outcomes, rather than as comprising the ultimate law of the case." *Id.* (citing, *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir.1991)(quotation marks omitted)). Nevertheless, the Circuit Court affirmed this Court's determination and concluded its inquiry in the following manner:

> bringing all the factors into consideration, the law of Puerto Rico most probably applies to this hybrid contract/tort action and, perforce, the district court properly made reference to the Puerto Rico Dealer's Act for the purpose of the motion to impose a provisional remedy.

*Id.*, at 323(emphasis added).

It was clear then, that the First Circuit Court did not directly entertain the issue of whether Capen's was "dealer" under Law 75,[7] but only incidentally. Instead

---

7. The Court wishes to underscore that with

respect to the issue of whether Capen's was

that Court focused its attention on the more crucial determination—**on which, of course, the first necessarily depended on**—of whether Puerto Rico law was applicable altogether. See *A.M. Capen's Co.*, 74 F.3d at 323. And at that the Circuit Court unmistakably held that **"the law of Puerto Rico most probably applies."** *Id.* (emphasis added). Thus, **the appellate Court affirmed the applicability of local law** to the facts of this case, notwithstanding it was a "close matter."[8] As such, this Court's determination was affirmed.

Eventually, the case returned to this Court for final disposition. Soon thereafter, this Court entertained and granted Capen's summary judgment on the issue of liability, awarding damages in its favor.[9] This Court first observed that ATAPCO had failed to provide additional evidence on Capen's dealership status, albeit the Court, prior thereto, granted ATAPCO further opportunity to provide additional facts. Thus, this Court found that there was no reason justifying a reconsideration of the initial, albeit preliminary, finding, and therefore gave closure to the matter based on the initial record. *See A.M. Capen's Co.*, 12 F.Supp.2d at 223. On March 31, 1998, judgment was entered, declaring in part that:

> Having the court rendered its Opinion and Order on this same date, judgment is entered accordingly. Defendants ATAPCO and Blas Rossy are to pay jointly and severally to Plaintiff, A.M. Capen's Co. Inc. $135,352.00 resulting from an impairment of an exclusive deal-

"dealer"—as the Circuit Court's opinion undeniably suggests—it merely held that this Court properly **"made reference"** to Law 75. *See id.*, at 323.

8. The Circuit Court made no expression as to venue since the issue was not properly elevated by the parties.

ership representation (ATAPCO) **and a tortious interference with a contractual relationship** (Blas Rossy).

*See* Docket Nos. 133 (Opinion and Order) & 134 (Judgment)(emphasis added).

The Court later issued an amended judgment which provided as follows:

> At the request of Plaintiff's motion to amend, judgment is entered jointly and severally against [ATAPCO], Blas Rossy, Rafaela Gonzalez and the conjugal partnership established amongst them, in the amount of $135,352.00 resulting from an impairment of an exclusive dealership representation (ATAPCO) **and a tortious interference with a contractual relationship (Blas Rossy, Rafaela Gonzalez and the conjugal partnership).**

See Docket No. 142 (emphasis added).

After final (amended) judgment was entered, both parties, once again, appealed.

**B. Round Two.**

On appeal the second time, ATAPCO raised five issues, most of which were directed to objecting the application of Law 75 in this case; to wit, ATAPCO claimed on appeal that:

> 1) The District Court erred in deciding in favor of the application of Act 75 to the facts of the case.
>
> 2) The District Court erred by finding that the Puerto Rico Legislature intended the application of the law to non residents and whose dealings with the Principal are not executed in Puerto Rico.

9. This Court, of course, held a hearing for several days on damages before rendering a final determination. (See Docket Nos. 128 & 129).

3) The District Court erred by refusing to refer the application of Act 75 to the certification procedure, as a matter of substantive law, to Puerto Rico's Supreme Court.

4) The District Court erred by holding plaintiff's appellee's President and sole shareholders as qualified to testify as an expert.

5) **The District Court erred by not considering the lack of dominant contacts with the Commonwealth,** as demonstrated at trial, as evidence to be considered.

*See* Capen's Memorandum in Support of Plaintiff's Motion for Execution of Judgment, p. 7, Docket No. 171 (emphasis added).

The First Circuit heard ATAPCO's (and Capen's) arguments on November 1, 1999. On February 8, 2000, Circuit Judge Torruella, writing for that Court, issued an opinion which "reversed" this Court's initial determination to grant preliminary injunction. *See A.M. Capen's Co., Inc.,* 202 F.3d at 473 ("[W]e take into account that the initial decision was not intended to be binding, and that the court did **not fully** contemplate the meaning of dealer **under the Act,** but rather considered the Act only in the context of Puerto Rico's interest in the action")(emphasis added).

From the outset, the Court noted that the Circuit Court's previous opinion had made the determination that Capen's claims should be resolved "under the laws of Puerto Rico," and particularly under Law 75. The Court further noted that although it had initially held that these issues were likely to be resolved in Capen's favor—as, in fact, were resolved in Capen's favor—the Court nonetheless had to "again consider" those issues for a second time.

The Court began to reexamine the specific facts that would eventually lead it to a reexamination of the matter. In examining the facts, the Court immediately underscored that the parties in this case were foreign corporations, with established places of business **outside** of Puerto Rico's jurisdiction, and, thus, way **beyond the reach of Puerto Rico's laws,** including Law 75:

> The negotiations took place in **Missouri and New Jersey.** Pursuant to the agreement, ATAPCO's products were shipped to Capen's **in New Jersey.** Capen's would generally take orders from its Puerto Rican customers **in New Jersey** via telephone or fax, although an agent would actually travel to Puerto Rico two to three times a year for that purpose. Capen's would then ship the products directly to its customers in Puerto Rico and send bills **from New Jersey** to Puerto Rico. **Capen's did not advertise in Puerto Rico, nor did it maintain a warehouse, showroom, inventory, employees, office, address, or telephone number in Puerto Rico.** Likewise, Capen's is **not qualified to do business in Puerto Rico.**

*A.M. Capen's Co., Inc.,* 202 F.3d at 471 (emphasis added).

That Court however emphasized that "the only matter before the Court is the applicability of Act 75. . . ." Nonetheless, the Court noted that, on appeal, Capen's was also raising the issue regarding this Court's choice of law determination, but stated, "since we hold that Act 75 does not apply, and Puerto Rico law on this issue is identical to Missouri and New Jersey law—the other forums that might have an interest—**there is no conflict of law.**" *Id.* at 472, n. 6 (emphasis added). After carefully analyzing Law 75's statutory language, together with its legislative history, the Court unequivocally held that, in order for Law 75 to be applicable, a "**Act 75 dealer [must] be located in, be a resident**

of, or be authorized to do business in Puerto Rico." *Id.* at 474 (emphasis added). Accordingly, the Court concluded as follows:

> Based on the facts before us, we cannot conclude that Capen's operates "in Puerto Rico" for purposes of Act 75. **Capen's presence in Puerto Rico is almost nonexistent;** Puerto Rico is merely one of the destinations markets for the ATAPCO goods that it distributes. Capen's has no employees, no office space or warehouses, and no assets in Puerto Rico. Other than the two or three times a year that an agent visits Puerto Rico to take orders directly, all other contact and orders are made through New Jersey, where Capen's maintains a place of business and is incorporated.

*Id.* at 474–75 (emphasis added).

Therefore, "based on the parties' limited connection to Puerto Rico," *see id.* at 475, the Circuit Court held that Law 75 was inapplicable to the case at bar. Hence, having ruled on the Law 75 matter with respect to ATAPCO, it "reverse[d] and remand[ed] for proceedings consistent with th[e] opinion." *Id.* That Court, however, **remained silent as to** the **tortious interference cause of action against Blas Rossy, Rafaela Gonzalez and their conjugal partnership.**[10]

Capen's sought reconsideration to no avail, and later sought *certiorari* in the Supreme Court, also to no avail. The case eventually returned to this Court. And notwithstanding the Circuit Court's clear intent of ending the match, the parties have continued to quarrel, nitpicking the language of Judge Torruella's ruling. As a result, nearly two years after, the debate has not yet ended.

## C. Round Three.

After returning from its second appeal, this Court has made multiple attempts to assist the parties in reaching settlement. On November 28, 2001 a Status/Scheduling Conference was held. (Docket No. 161). There the Court provided the parties additional time in an effort to reach settlement. Pursuant to the minutes of proceedings, the Court set the following deadlines and provided as follows:

> The Court **GRANTED** the parties until **January 16, 2001** to attempt to settle this case. In the event that the Parties do not reach a settlement, the Court sets the following deadlines, to commence on **January 17, 2001:**
>
> 1) Plaintiff is to file a Motion for Execution of Judgment by **February 16, 2001.**
>
> 2) Defendants are to file an opposition to plaintiff's motion **thirty (30) days** thereafter, that is by **March 19, 2001.**
>
> Again, the Parties are strongly encouraged to fully explore settlement. No extensions shall be granted.

(Docket No. 161).

Then, on May 3, 2001, the Court issued an order which reminded the parties of the deadlines that had been established previously and stated in pertinent part:

> To date, the parties have not informed the Court if a settlement has been reached or have plaintiffs filed a Motion for Execution of Judgment. Moreover, no filings have been made with the Court in this case, since November 28,

---

10. The district court only notes that, as to the services provided by the non-Puerto Rican resident, all services provided, "warehouse, showroom, inventory, advertisement and employers," were provided by an entity whose principal place of business is outside Puerto Rico and who obviously created a market for the principal "from 30,000 [in 1978], to 423,-000 [in 1993]." *A.M. Capens Co.,* 74 F.3d at 319.

2000, more than five (5) months ago. Therefore, plaintiff is ordered to show cause why this case should not be **dismissed for lack of prosecution and/or for lack of compliance with Court's orders by May 11, 2001 at 5:00 p.m. No extensions shall be granted.** (Docket No. 162).

On **May 21, 2001** Capen's filed a Motion to Show Cause of Why the Case Should Not be Dismissed. (Docket No. 164). In the motion to show cause, Capen's alleged that the parties had met to discuss the possibility of settlement to no avail, and that its motion for execution of judgment was not filed before "due to the expectancy of a settlement. . . ." (Docket No. 164). Moreover, Capen's added that counsel for the opposing party did not inform it that it did not want to settle until "[a]fter the month of March." *Id.* In any event, Capen's alleged that Puerto Rican law establishes that a judgment creditor has fifteen (15) years from the date when the judgment is final and firm to move to execute judgment. *Id.*

On May 21, 2001, Capen's filed a Motion Requesting Execution of Judgment, although the Court had granted it until February 16, 2001 to do so. (Docket No. 165). Simply put, **Capen's filed its motion to execute more than 13 weeks past the deadline.**

In its motion to execute, Capen's alleged *inter alia* that, while it was true that the Circuit Court struck its Law 75 cause of action against ATAPCO, its failure to specifically strike Capen's cause of action against Blas Rossy, Rafaela Gonzalez and their conjugal partnership for tortious interference, **combined with** that Court's particular disposition to "reverse **and remand** for proceedings" *see A.M. Capen's Co., Inc.,* 202 F.3d at 475 (emphasis added), are evidence that execution against Blas Rossy, Rafaela Gonzalez and their

conjugal partnership is plausible. Citing case law from the Fifth Circuit, Capen's alleged in its motion that, because "[t]he applicability of Puerto Rico's contract law to this matter was not even considered, therefore, the District Court decision has become binding on the parties and this is the law of the case." (Docket No. 165). As such, it requested a writ of execution in its favor.

On May 30, 2001, the Defendants opposed Capen's motion reminding the Court that it was untimely filed, and denying Capen's justification for its late filing, stating that the parties had never "met to discuss the possibility of a settlement." (Docket No. 166). Therefore, because Capen's had disobeyed Court imposed orders and deadlines, the Defendants requested dismissal. *Id.* On June 11, 2001, Capen's replied averring that, because Puerto Rico law provides fifteen (15) years to execute judgment, it is incorrect to state that their request for execution of judgment was untimely filed. (Docket No. 167).

On July 2, 2001, the Defendants filed a motion proffering that Capen's is nevertheless barred from executing judgment against them because case law interpreting the tortious interference cause of action establishes that such a claim can never be enforced when the contract allegedly interfered with **did not contain an expiration date.** *See Dolphin Int'l of P.R. v. Ryder Truck Lines,* 127 D.P.R. 869, 1991 WL 735928 (1991)("tortious interference liability cannot be fixed . . . while under a contract with no fixed period of time"). Hence, since the parties' contract did not have an expiration date, the cause of action of tortious interference was inapplicable. The Defendants argued additionally that, nevertheless, execution of judgment was impossible because Circuit Judge Torruella's ruling foreclosed the applicability of

Puerto Rican law altogether. (Docket No. 168).

Pursuant to Court orders, on August 7, 2001, Capen's filed a memorandum which basically restated its stance. Namely, that the tortious interference cause of action against Blas Rossy, Rafaela Gonzalez and their conjugal partnership constitutes the law of the case, and that this aspect of the final judgment entered by this Court, was not repealed by Torruella's ruling. It further contends that this issue was not taken up on appeal, and that therefore, as a matter of law, the Defendants had waived it. Capen's, however, recognized that it is uncertain to know "whether the First Circuit realized that the amended judgment imposed responsibility to ATAPCO and to Rossy based on tortious interference and that said issue had not been raised on appeal, [nor] addressed [nor] resolved." (Docket No. 171, p. 8). Capen's simply assumes that, because the First Circuit "remanded" the case back to this Court, therefore "something else had to be executed at the District Court level." *Id.* Capen's argues that the "something else" which had to be executed, "must be the part of the judgment that imposed joint and several responsibility to the defendants .... for tortious interference." *Id.* Lastly, Capen's argues in its memorandum that, although it is true that a party may not unilaterally cancel an agreement which has no expiration, it may not modify it at will while it is in effect. *Id.*

The Defendants filed their memorandum on August 14, 2001. (Docket No. 173). They divide the remaining controversy of this case in twofold: to wit, they contend that the first issue is whether defendants "violated the exclusivity clause under the civil contract pursuant to the covenants of the contract"; and the second issue, they argue, is "whether Blas Rossy tortiously interfered with the civil contract between

two principals." *Id.* The Defendants, of course, state that they neither violated any exclusivity clause, nor did they tortiously interfere with any contract. The Defendants allege that Blas Rossy **had no knowledge** of the contract between ATAPCO and Capen's, which is one of the elements required by case law for the configuration of a tortious interference action. Thus, no tort attaches here. Next, they restate their contention that, anyway, the existing contract between ATAPCO and Capen's was terminable at will, since it had no fixed expiration date. And pursuant to *Dolphin Int'l of P.R.*, for fundamental constitutional and strong public policy reasons, there can be no tortious interference when the contract at issue has not expiration date and is terminable at will. *See* 127 D.P.R. at 886, 1991 WL 735928 Thus, for said reasons, the Defendants again requested dismissal of this case.

On October 4, 2001, this Court entertained the parties' arguments at a hearing. There the Court again insisted that agreeing on settlement would be wise and beneficial to all. Particularly since they continue, and most likely will continue, to be partners in business, albeit their longstanding differences. Having stated that, the Court took the pending matters under advisement. (See Minutes, Docket Nos. 176 & 177).

Finally, on October 26, 2001, the Defendants filed a supplemental memorandum. (Docket No. 178). Therein, the Defendants bring to the attention of this Court an opinion recently issued by Puerto Rico's Supreme Court, touching on the issues which, according to them, this case presents. The case is *Lorenzana Torres v. General Accident Insurance Co.*, 2001 T.S.P.R. 108. In that case, Justice Hernandez–Denton stated inter alia the following: "A service contract **without a fixed term can be terminable at will** by any of

the contracting parties," and hence no tortious interference claim could be made under said agreement. *See Lorenzana Torres*, 2001 T.S.P.R. 108, Part VI, at p. 525 (court's translation; emphasis added).

The Defendants argue that *Lorenzana Torres* is yet additional basis justifying the dismissal of this case, absent any protection under Law 75. (Docket No. 178). On November 6, 2001, Capen's replied to the Defendants' motion, stating that *Lorenzana Torres* does not support the Defendants' position "and has no bearing on the issue presently before this Court mainly because it does not refer to an exclusivity clause in a contract." (Docket No. 179). Because Capen's contract had "exclusivity clause," therefore Capen's argues that the case at bar presents an "issue of exclusivity," and *Lorenzana Torres* did not. Thus, it requested that this Court completely ignore the holding of *Lorenzana Torres*. *Id.*

## II

The Court has seriously pondered the arguments presented by both parties in this case. Furthermore, the Court has **closely** reexamined the record and the two rulings entered by the First Circuit Court here, which are binding law to this Court and trump and/or override all other considerations or allegations. After **carefully** evaluating this "close matter," the Court finds that there are two fundamental reasons justifying dismissal of this case. To wit, this case shall be dismissed (1) because the Circuit court issued an opinion and entered judgment dismissing this case in its entirety; and (2) this case should be dismissed because, in any event, the requisites for a cause of action for tortious interference of contract under Puerto Rico law are not present here, specifically because the underlying contract is not covered by Law 75.

## A. The First Circuit's Ruling Dismissed this Case in its Entirety

Capen's main contention is that, although the Circuit Court struck its Law 75 cause of action against ATAPCO, its cause of action against Blas Rossy, Rafaela Gonzalez and their conjugal partnership for tortious interference is still executable, under Puerto Rico tort law. In support thereof, Capen's emphasizes three points: First, Capen's argues that this Court's judgment and final judgment provided, not only for ATAPCO's liability under Law 75, **but also for the liability of Blas Rossy, Rafaela Gonzalez and their conjugal partnership, for tortious interference;**[11] second, Capen's further argues that ATAPCO failed to raise the tortious interference issue on appeal, and that thus Judge Torruella's ruling completely failed to address or resolve said issue; and third, Capen's feels its argument is buttressed by Judge Torruella's particular, final disposition of "remanding" the case evidences that "something else" had to be executed, to wit, Blas Rossy's (and Rafaela Gonzalez and their conjugal partnership's) liability for tortious interference. Hence, Capen's concludes that the tortious interference cause of action is still executable.

■ In other words, Capen's has held steadfast to its view that the most recent Circuit Court ruling left untouched this Court's judgment, which found Blas Rossy, Rafaela Gonzalez and their conjugal partnership liable for interfering with Capen's and ATAPCO's dealership contract. Capen's view is obviously error. The First Circuit has explained and instructed otherwise:

---

11. See Docket Nos. 133, 134 & 142.

In terms of the dynamics between trial and appellate courts, the phrase "law of the case" signifies, in broad outline, that a decision of an appellate tribunal on a particular issue, unless vacated or set aside, governs the issue during all subsequent stages of the litigation in the nisi prius court, and thereafter on any further appeal.... It follows then, that **"when a case is decided by an appellate court and remanded ... any questions that were before the appellate court and disposed of by its decree become the law of the case and bind the district court on remand."**

*United States v. Rivera–Martinez,* 931 F.2d 148–150 (1st Cir.1991)(*citing United States v. Belculfine,* 527 F.2d 941, 943 (1st Cir.1975))(emphasis added).

■ Accordingly, since the circuit's court determined on appeal that the case should be reversed, **that decree has become the law of the case.** Thus, any possibility of execution has been completely foreclosed under the law of the case established on appeal. This Court is simply without authority to do anything more than dismiss this case.

Capen's further argues that ATAPCO failed to raise the tortious interference issue on appeal, and that, thus, Judge Torruella's ruling completely failed to address or resolve said issue. Therefore, according to this theory, Capen's insists that this Court's finding that Blas Rossy is liable for tortious interference is still binding and executable. Again, for the same reasons stated above, Capen's is incorrect. The law of the case established by the Court of Appeals has unquestionably trumped this Court's previous decree. Therefore, Capen's theory fails.

Finally, Capen's feels execution of this Court's judgment is buttressed by Judge Torruella's particular, final disposition of "remanding" this case, as found in the last sentence of **the opinion.** *See A.M. Capen's Co., Inc.,* 202 F.3d at 475("We therefore reverse **and remand** for proceedings consistent with this opinion")(emphasis added). Capen's believes that this shows there was "something else" left to be done on remand. Capen's is convinced that this "something else" was the execution of Blas Rossy's liability for tortious interference, under Puerto Rico's tort law, as decreed by this Court's appealed judgment.

Again, for the reasons fully explained above, Capen's hunch clearly lacks merit. Thus, it is unnecessary to state more at this time. However, the Court wishes to clarify some misfounded notions.

When Judge Torruella, writing for the appellate court, stated **in its opinion** that judgment of "reversal" was going to be entered, that unquestionably meant that this Court's decree was being vacated **in its entirety.** The **opinion** of a court is the statement of the reasons for deciding the case in a certain way. It is a **useful**—and indeed, in our system, a common—tool of adjudication, because it can be consulted to resolve ambiguities in the court's **judgment.** But Capen's must be mindful that an **opinion** "does not **of its own force** require anyone to do anything." Michael E. Tigar & Jane B. Tigar, Federal Appeals § 10.15, p. 531 (3d ed.1999)(emphasis added).[12]

■ Nevertheless, neither the decisions nor the opinions of appellate courts are self-executing; cases must be returned to the lower court where officials and parties can be ordered to implement the appellate

---

12. A court may, however, choose to incorporate its opinion into its judgment, and in that case "the opinion's language acquires di-

rective force." Tigar & Tigar, Federal Appeals § 10.15, p. 531.

court's judgment. Thus, where the judgment of an appellate court calls for the remand for further action consistent with the appellate court's ruling, that judgment is not self-executing. It must be certified back to the trial court for execution. This is done by what is usually called the judgment or mandate. *See Board of Regents v. Harriman*, 857 S.W.2d 445, 449 (Mo. App. S.D.1993).

■ A "mandate" is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. 5 Am.Jur. 2d §§ 776. The term mandate is the one most frequently used in this context, but there is no magic in the term. It is the communication of a directive from a higher court to a lower one, and it may be styled mandate, decree or judgment. The delivery for compliance is what counts. *United States v. Gardner*, 464 F.2d 614 (9th Cir. 1972); *Warren v. United States*, 358 F.2d 527 (D.C.App.1965).

The **judgment** or **mandate** of a court is entered in accordance with Fed.R.Civ.P. 36, usually as a separate document. It is usually prepared, signed, and entered by the clerk based on the opinion. *Id.* The opinion is "filed." The judgment or mandate is "entered." And time for seeking rehearing and rehearing en banc runs from "entry." *Id.*[13]

■ The function of the mandate is threefold: namely, to establish the finality of the appellate court's judgment, to re-store jurisdiction in the tribunal from which the appeal is taken, and to communicate the court's judgment to that tribunal. Its importance, however, rests on the fact that any proceedings on remand which may be contrary to the directions contained in the mandate from the appellate court, may be considered null and void. 5 Am.Jur. 2d, §§ 791. Further, the mandate demands action in compliance with an opinion of an appeals court, even if the trial court is not so specifically admonished. *State v. Allison*, 384 S.W.2d 544 (Mo.1964)(en banc).

■ However, where the case is remanded for disposition of the remaining post-trial issues that were not addressed by the trial court, any issue the trial court had previously addressed may not be considered on remand. Similarly, when a case is remanded for a specific act, the entire case is not reopened, but rather the lower tribunal is only authorized to carry out the appellate court's mandate, and the trial court may be powerless to undertake any proceedings beyond those specified. 5 Am.Jur. 2d, §§ 787.

In some jurisdictions, courts hold that, in the event of a conflict, the mandate must give way to the opinion. *See Albuquerque Broadcasting Co. v. Bureau of Revenue*, 54 N.M. 133, 215 P.2d 819 (1950); *Sherrill v. Sovereign Camp, W.O.W.*, 184 Okla. 204, 86 P.2d 295 (1938). In other jurisdictions, other courts hold that the mandate always trumps. *See Aguilar v. Safeway Ins. Co.*, 221 Ill.App.3d 1095, 164 Ill.Dec. 418, 582 N.E.2d 1362 (1991)("the correctness of a trial court's action is to be

---

**13.** It has been expressed that:

District judges often point out that the remand order either does not adequately instruct them about what to do or it so limits their discretion that the court of appeals might as well have directed the entry of particular judgment. If the remand order, as issued, is imprecise or does not go far enough, counsel should consider petitioning for rehearing.... To obviate such difficulties, counsel should include in the brief suggested language for the mandate.
Federal Appeals § 10.15, p. 537.

determined from the appellate court's mandate, as opposed to the ... opinion unless the mandate directs the trial court to proceed in conformity with the opinion").

■■■■ Finally, an appellate court is empowered by 28 U.S.C. § 2106 to vacate, reverse or set aside an order or decree lawfully brought before it on appeal.[14] The act of vacating or reversing a judgment or an order below "deprives it of any effect, including precedential effect." 2A FEDERAL PROCEDURE, LAWYERS EDITION § 3:780. "An appellate court reverses a judgment when it feels that the judgment must be overthrown or annulled for error." *Id.* § 3:784. Simply put, "[a] reversal annuls the judgment below." *Id.* § 3:792. And since execution of judgment is the lower court's exclusive obligation, where an appellate court reverses the lower court, execution of that action must therefore be performed by the lower court, fully complying with the directive of the mandate from above. *Begley v. Vogler*, 612 S.W.2d 339, 341 (Ky., 1981).

■■■■ In the case at bar, the First Circuit Court's **judgment or mandate,** is more precise in this respect than its opinion. The judgment signed by the First Circuit Court's Clerk in this case states as follows:

"Upon consideration whereof, it is no here ordered, adjudged and decreed as follows: **The judgment of the district court is reversed** and the cause remanded to the district court for further pro-

ceedings consistent with the opinion issued this date."

*See* Docket No. 157 (emphasis added).

If the Circuit Court would have intended to reverse only in part, it would have sufficed to state so in the judgment, and perhaps in its opinion. It did not. Hence, a reading of the judgment clearly confirms the fact that judgment was not vacated in part, but in its entirety.

■■■■ Moreover, the fact that the Circuit Court "remanded" the case does not necessarily imply that there was "something else," as Capen's suggests. The Court rejects Capen's theory. Because execution of an appellate court's decision is not self-executing, an appellate court will, as a matter of routine appellate procedure, first reverse, and then "remand" the case so that its judgment is duly recognized, obeyed, and executed by the lower court, fully complying with the directive of the mandate. *See Begley*, 612 S.W.2d at 341. Thus, when the First Circuit Court "reversed," that reversal completely annulled this Court's judgment. See 2A FEDERAL PROCEDURE, LAWYERS EDITION § 3:792. It then remanded the case, because execution of its reversal must be performed by this lower court, fully complying with the directive of the mandate from above. *Begley*, 612 S.W.2d at 341.

■■■■ In sum, since the First Circuit Court held that this Court's judgment be reversed, **that decree has become the law of the case.** By reversing a judgment of the district court, the appellate court voids the lower court's findings. *Atlantic Coast Line Railroad v. Saint Joe Paper Co.*, 216

---

**14.** Thus, when deciding a case under 28 U.S.C. § 2106, the court of appeals' power is plenary. Section 2106 provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, de-

cree, or order of a court lawfully brought before it for review, and may remand the cause and direct entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

F.2d 832 (5th Cir.1954), *cert. denied,* 348 U.S. 963, 75 S.Ct. 522, 99 L.Ed. 750 (1955). Accordingly, any possibility of execution has been completely foreclosed under the law of the case established on appeal. This Court is simply without authority to do anything more than dismiss this case. This is sufficient to dismiss this case. But even so, there is yet another potent elixir which mandates dismissal of this case.

## B. The Required Elements of a Tortious Interference Cause of Action Under Puerto Rico Law are Not Present in this Case

Capen's further contends that it has successfully stated a cause of action for tortious interference against Blas Rossy, Rafaela Gonzalez and their conjugal partnership. Assuming *arguendo* that this Court's amended judgment of May 13, 1998 (Docket No. 142), is still in force, Capen's assertion is nonetheless unfounded. No tortious interference attaches here.

The Supreme Court of Puerto Rico recognized for the first time in *General Office Products v. A.M. Capen's Sons,* 15 P.R. Offic. Trans. 727, 1984 WL 270915 (1984), the possibility of a cause of action for tortious interference, pursuant to Puerto Rico's general tort statute, *i.e.,* article 1802 of the Civil Code. 31 P.R. Stat. Ann., § 5141. However, in order to establish such an action, that Court stated that a party must show:

1) the existence of a contract;
2) that the defendant who interfered had prior knowledge of said contract;
3) that plaintiff has suffered damages; and
4) a casual relationship between defendant's (interfering) acts and the damages suffered by plaintiff (causation).

*See General Office Products,* 15 P.R. Offic. Trans. at 734–35, 1984 WL 270915. And

that Court said that such an action is applicable to an exclusive distributorship under Law 75. Nonetheless, the Supreme Court explained that "[t]here are situations where this is not so, but this happens mainly **when high ranking public interests prevent it.**" *Id.* at 734, 1984 WL 270915.

■ A few years later, that Court faced one of those situations. In *Dolphin Int'l of P.R.,* the Supreme Court held that tortious liability interference cannot be determined against a defendant when the underlying prejudicial contract has no fixed period of time. *See* 127 D.P.R. at 886, 1991 WL 735928. In other words, the Court held that "the third person interfering with said [contractual] relation will not be held liable in an action for damages for tortious interference if the contractual relation is terminable at the parties' will." *Id.* (citing the unpublished official translation).

Finally, after judgment was issue, Puerto Rico's Supreme Court in 1998, in the case of *Lorenzana Torres* (Hernandez Denton, J.) stated:

> **Absent the protection of Law 75,** the respondents only had the right to file a claim based upon any kind of contractual arrangement between them and General. The record shows that there was no major contractual relationship between the parties other than an agreement whereby respondents would negotiate insurance contracts on behalf of General in exchange for pre-decided commissions. **Said agreement did not provide for the duration of said contractual relationship. A service contract without a fixed term can be terminable at will by any of the contracting parties.** Therefore, General **was free to terminate the contractual relationship** with

Lorenzana and Advisory **without just cause.**

*See Lorenzana Torres,* 2001 T.S.P.R. 108, Part VI, at p. 525 (court's translation; emphasis added; citation omitted).

■ Accordingly, pursuant to Puerto Rico's Supreme Court, tortious interference can only occur under two circumstances: first, when Law 75 is applicable; and secondly, when, notwithstanding Law 75's inapplicability, the contract nevertheless has a fixed expiration term. Tortious interference can only be present under these two circumstances.

In the case at bar, it is clear that Law 75 does not apply. *A.M. Capen's Co., Inc.,* 202 F.3d at 475. Therefore, the Court must ascertain whether ATAPCO and Capen's contract was terminable at will. *Dolphin Int'l of P.R.* and *Lorenzana Torres,* stand for the proposition that there can be no tortious interference when the contract at issue has not expiration date and is terminable at will, and when Law 75 is inapplicable. *See Dolphin Int'l of P.R.,* 127 D.P.R. at 886. Therefore, since

ATAPCO and Capen's contract had no expiration date—a fact that even Capen's has accepted, *see* Docket No. 171—then Puerto Rico's tortious interference cannot attach. Hence, Capen's is totally precluded from executing judgment against the Defendants on tortious interference grounds, absent a contract covered under Law 75. *Lorenzana Torres, supra,* at p. 525. Its contract with ATAPCO simply **did not contain an expiration date.** Therefore, even assuming *arguendo* that this Court's amended judgment of May 13, 1998 is still in force—and it is not—Capen's contention nevertheless fails.[15]

### III

In conclusion, after closely reexamining the record and the two rulings entered by the First Circuit Court, which are binding law to this Court and abrogate all other considerations or allegations, the Court finds that there are two fundamental reasons justifying dismissal of this case.

The Court finds that case shall be dismissed (1) because the Circuit Court's second opinion and judgment reversed this

---

**15.** Pending also is the issue regarding Capen's lack of prosecution and/or lack of compliance with the Court's orders. (*See* Order, Docket No. 162). After this Court, on May 8, 2001, issued an order to show cause directed at Capen's, on May 21, 2001, Capen's filed a Motion Requesting Execution of Judgment. (Docket No. 165). This motion seeking execution was filed notwithstanding the deadline to do so had elapsed. (*See* Minutes, Docket No. 161)(the minutes also stated and underscored that **no extensions** would be granted). The Court had granted Capen's until February 16, 2001 to do so, but it did so only after issuing an order to show cause. **In short, Capen's filed its motion to execute more than 13 weeks past the deadline and failed to provide reasonable justification as to the reasons for the non-compliance with this Court's case management deadlines.**

Moreover, five months had already elapsed before Capen's made **any** filings in this case, and no movement was made on its part to

diligently prosecute this case. It was not until the Court resorted to the issuance of an order to show cause as to why this should not be dismissed for lack of prosecution and for lack of compliance with the Court's orders, that Capen's reacted.

Capen's alleged that the parties had met to discuss the possibility of settlement to no avail, and that its motion for execution of judgment was not filed before "due to the expectancy of a settlement...." (Docket No. 164). Moreover, Capen's added that counsel for the opposing party did not inform it that it did not want to settle until "[a]fter the month of March." *Id.*

Although the Court has broad powers to seek enforcement of its orders, and sanction those that fail to obey them, nevertheless, the Court will not sanction Capen's lack of prosecution and/or failure comply with Court's orders because the Court understands that Defendant may have lured plaintiffs into thinking that settlement was an option.

district court's judgment; and (2) this case should be dismissed because, in any event, the requisites for a cause of action for tortious interference of contract under Puerto Rico law are not present here, particularly since there is no protection under Law 75. *Lorenzana Torres, supra.*

**WHEREFORE,** for the reasons set forth above, this case is **DISMISSED WITH PREJUDICE.**[16] Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

### *JUDGMENT*

Pursuant to the Order issued by the Court on this same date, plaintiff's claims against defendants, Blas Rossy and Rafalela Gonzalez alleging tortious interference with a contract, are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ADJUDGED AND DECREED.**

16. For administrative purposes, this order disposes of the following motions: namely, *Plaintiff's Motion to Show Cause as to Why the Case Should Not Be Dismissed,* (Docket No. 164); Plaintiff's Motion Requesting Execution of Judgment (Docket No. 165); Defendants' Opposition to Motion as to Why Case Should Not be Dismissed in Accordance With Post Judgment Scheduling Orders (Docket No. 166); Plaintiff's Reply to Opposition as to Why Case Should Not Be Dismissed (Docket No. 167); ATAPCO's Statement as to Why this Court Must Deny A.M. Capen's Request for Execution of Judgment (Docket No. 168); Plaintiff's Memorandum in Support of Plaintiff's Motion for Execution of Judgment (Docket No. 171); Defendants' Memorandum of Law in Support of Inexistence of Liability in the Case Under Puerto Rico's Civil Law (Docket No. 173 & 174); Defendants' Motion Submitting Recent Jurisprudence in Support of Inexistence of Liability in the Case Under Puerto Rico's Civil Law (Docket No. 178); and Plaintiff's Reply to Motion About Jurisprudence (Docket No. 179).